STATE of Oklahoma ex rel. OKLAHOMA STATE BOARD OF EMBALMERS AND FUNERAL DIRECTORS, and Oklahoma State Board of Embalmers and Funeral Directors, Plaintiffs in Error,

v.

GUARDIAN FUNERAL HOME, an Oklahoma Corporation, Defendant in Error.

No. 41402.

Supreme Court of Oklahoma.

June 20, 1967.

G. T. Blankenship, Atty. Gen., Okl., Penn Lerblance, Asst. Atty. Gen., for plaintiffs in error.

Gene H. Hemry, Hemry & Hemry, Oklahoma City, John H. Cantrell, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an appeal by the Oklahoma State Board of Embalmers and Funeral Directors (herein referred to as Board) from a judgment of the lower court sustaining the motion of Guardian Funeral Home (herein

referred to as Funeral Home) for judgment on the pleadings. The judgment vacated and declared void a prior order of the Board in which the Board revoked the license of the Funeral Home for a period of 30 days.

The Funeral Home is a corporation and had procured from the Board a license to engage in the profession or business of funeral directing and embalming. 59 O.S. 1961, §§ 396.4 and 396.6.

This controversy had its inception when a complaint was filed with the Board (59 O.S.1961, § 396.13) charging the Funeral Home with entering into a contract to furnish a prearranged funeral service and plan in violation of 59 O.S.1961, §§ 401, 402, 403, whereby said license was subject to either permanent or temporary revocation pursuant to 59 O.S.1961, §§ 406 and 396.13.

The complaint stated in part that on a certain date the Funeral Home

" * * * a funeral home duly licensed pursuant to and under the laws of the State of Oklahoma, then and there willfully, intentionally and unlawfully entered into a certain contract with one Miss Opal Mae Sharp, wherein said funeral home did agree to furnish a prearranged funeral service and plan whereby said funeral home did, for valuable consideration, to-wit: $36.00 in lawful money of the United States of America, contract and agree to furnish said Miss Opal Mae Sharp standard funeral service and merchandise at a price not to exceed cost plus ten per cent upon the demise of said Miss Opal Mae Sharp or upon the demise of any member of the immediate family of said Miss Opal Mae Sharp or other person for whom she may be legally or morally responsible."

The complaint further alleged that said contract was an instrument made and subscribed by Guardian Foundation, having the same address as the Funeral Home, and attached a copy as Exhibit A. The instrument is a "Service Contract" with Miss Sharp whereby, inter alia, Guardian Foundation agreed to maintain relations with one or more funeral homes in Oklahoma City and vicinity that would supply Miss Sharp (Contract Holder) with standard service and merchandise at a price not to exceed cost plus ten per cent.

The complaint further alleged that the Funeral Home ratified said contract when it issued a "Credit Certificate" (Exhibit B) to Miss Sharp, agreeing to allow a credit of $36 on the purchase of a complete adult funeral service from the Funeral Home, and containing also a statement that the credit in no way interfered with the service contract issued by Guardian Foundation. The complaint also alleged the Funeral Home issued a "Life Registration Card" (Exhibit C) to Miss Sharp, certifying she was a member of the Guardian Program, and referring to the service contract.

The Funeral Home filed a verified answer to the complaint consisting of a general denial and a specific denial that it ever appointed or authorized the President of Guardian Foundation (who signed the Service Contract) to act as the agent or representative of the Funeral Home.

Hearing was held before the Board and the above described written instruments were introduced and other evidence and testimony was heard. The Board took the matter under advisement. Some three months later the Board entered an order finding the "allegations set forth in said complaint" were true and revoking the license of the Funeral Home for a period of thirty days. The Funeral Home appealed to the District Court of Oklahoma County. The District Court remanded the cause to the Board with directions to comply with the provisions of the Administrative Procedures Act, 75 O.S.Supp.1963, §§ 311 and 312, requiring findings of fact and conclusions of law.

The Board, without further hearing, entered an amended order in which it found that the Funeral Home and Guardian Foundation were separate corporate entities; that Guardian Foundation acted as agent for the Funeral Home in making a contract to furnish Miss Sharp funeral

services and merchandise at cost plus ten percent, less a credit of $36; that Guardian Foundation received a consideration of $35 cash from Miss Sharp and received free office space and utilities from the Funeral Home at the latter's funeral establishment; and concluded the Funeral Home had acted as a principal in a contract for a prearranged funeral service and plan in violation of 59 O.S.1961, §§ 401 through 406. Said order recited an additional conclusion that the Funeral Home's conduct violated 59 O.S.1961, § 396.12, subd. k, prohibiting such licensee "to pay or cause to be paid, directly or indirectly, for the securing of business; or to directly or indirectly solicit business." The order revoked the license of the Funeral Home for a period of 30 days.

Title 59 O.S.1961, § 401, provides in pertinent part that no licensed funeral home shall act as principal in any contract providing for a prearranged funeral service or plan for any person. Section 402 thereof defines a prearranged funeral service or plan as "any funeral service or plan which is arranged, planned, or determined prior to the demise of the person" for which the funeral service is to be performed. Section 403 thereof permits a funeral establishment to take money in payment of a funeral service prior to demise of a person, provided it is requested by the person without solicitation or advertisement, and provided the person or his representatives may request return and receive the money prior to performance of the funeral service. Title 59 O.S.1961, §§ 405 and 406, provide respectively, that any person violating the above provisions shall be guilty of a misdemeanor and shall constitute cause for revoking any license.

As stated, the Funeral Home filed a motion for judgment on the pleadings and the District Court sustained such motion and declared the order erroneous and void and vacated the same.

This court has held that a motion for judgment on the pleadings is in the nature of a demurrer. It tests the sufficiency of the pleadings and presents a question of law as to whether the facts alleged are sufficient to state a cause of action or a defense. Hill v. Anderson, Okl., 363 P.2d 849, 852. Under these rules of law, the trial court was called upon to determine whether the outlined pleadings alleged and reflected that the Funeral Home had violated the provisions of the statute, supra.

We point out that the complaint only charged the Funeral Home with entering into a contract to furnish a prearranged funeral service and plan. The Funeral Home was not charged with paying to secure business or soliciting business.

Neither § 401 nor §§ 402 and 403, define or describe "funeral service or plan" in any way by relating, either generally or specifically, the elements thereof or what would constitute a funeral service or plan. Collectively, the complaint and exhibits allege that an agreement made before death to supply standard (funeral) service and merchandise at cost plus ten per cent and allowance of $36 credit "on purchase of a complete adult funeral service" was a contract for a prearranged funeral service or plan. We further point out that the alleged "contract" has no provisions regarding selection and agreement as to the funeral merchandise (casket and accessories), or disposition of the remains, or as to any other parts of the service, and no agreement as to price (as distinguished from a very general method of determining the amount of charge).

In Bauer v. Bauer, 196 Cal. 757, 239 P. 49, 40 A.L.R. 1457, the court was presented with a controversy over funeral expenses and in connection therewith said a funeral embraced the coffining, embalmment, arraying, and sepulture or cremation of the body, together with those accustomed forms and ceremonies which attend upon the present disposition of the remains.

The word "prearrange" means to arrange beforehand.

The word "arrange" is defined in Webster's New International Dictionary, Second Addition as "To adjust or settle; esp.,

to settle by prior agreement or plan; to determine; as, to arrange a program * * To come to an agreement, understanding, or settlement; esp., to agree or settle details in advance; as to arrange about transportation, or for an appointment."

See Byas v. United States, 86 U.S.App. D.C. 309, 182 F.2d 94, 97, and Harwood v. Dysart Consol. School Dist., 237 Iowa 133, 21 N.W.2d 334, 336.

In Moore v. Vincent, 174 Okl. 339, 50 P.2d 388, 389, it is stated:

"Where it is necessary to procure a license in order to carry on a chosen profession or business, the power to revoke a license, once granted, and thus destroy in a measure the means of livelihood, is penal and therefore should be strictly construed. (Citing cases)"

After careful consideration of the complaint and exhibits attached thereto it is our opinion that the alleged acts of the Funeral Home do not constitute a contract for a "prearranged funeral service or plan." For the reasons stated and under the above authorities we conclude that the lower court did not err in sustaining the Funeral Home's motion for judgment on the pleadings.

After the amended order was transmitted to the District Court the Funeral Home renewed its objection to the sufficiency thereof because of failure to comply with the provisions of 75 O.S.Supp.1963, § 312, of the Administrative Procedures Act. The Funeral Home also presents this legal proposition to this court in support of the judgment holding the order erroneous and invalid.

Said § 312 provides that a final order shall include findings of fact and conclusions of law, separately stated, and that findings of fact, if set forth in statutory language, shall be accomplished by a concise and explicit statement "of the underlying facts supporting the findings." The authority vested in the reviewing court by 75 O.S.Supp.1963, § 322, to set aside, mod-

ify, or reverse and remand a Board order because the order is clearly erroneous in view of the reliable, material, probative and substantial evidence, does not relieve the Board of its obligation to state underlying facts supporting the findings. The statute requires this be done.

In the present case we have, to some extent, set out the evidence produced at the hearing. We did this as an aid to an understanding of the controversy. The Board had a duty to state in the order the underlying facts disclosed by the evidence that would support its findings and justify its conclusions. The content of the order should be such that the reviewing court, by reading the order, can decide whether the findings have any substantial support in the evidence, and intelligently determine from the manner in which the Board coordinated and evaluated the evidence that there was a reasonable basis for the order. Oklahoma Inspection Bureau v. State Board for Property and Casualty Rates, Okl., 406 P.2d 453, 357.

In Oklahoma Inspection Bureau, supra, we stated:

"Findings of administrative agency acting in a quasi-judicial capacity should be a recitation of basic or underlying facts drawn from the evidence, and must be free from ambiguity which raises doubt as to whether board proceeded upon correct legal theory, and must be sufficiently specific under circumstances to enable reviewing court to intelligently review order and ascertain if facts upon which order is based afford reasonable basis for order."

The order of the Board was deficient in the above respects and the lower court did not err in vacating such order.

This brings us to a consideration of that portion of the Board's amended order finding the Funeral Home guilty of violating 59 O.S.1961, § 396.12, subd. k, which prohibits payment, directly, or indirectly, for the securing of business, or to directly or indirectly solicit business. This was not

set forth as a charge in the complaint and the notice to the Funeral Home and did not appear in the original order. It was not an issue in the hearing before the Board. The Funeral Home was not put on notice that it was charged with this offense. In oral argument to this court the counsel for the Board concede the Board erred in making this additional finding.

In 73 C.J.S. Public Administrative Bodies and Procedure, § 121, p. 440, it is stated:

> The rule that the pleading and proof must conform is relaxed in administrative proceedings. However, while the scope of a hearing should not be arbitrarily limited, the issues in an administrative proceeding are ordinarily limited to those raised by the pleadings. A hearing should be confined to the points at issue, so as to insure to the persons affected full opportunity to be heard on any matter before a ruling thereon is made."

Our statute, 75 O.S.Supp.1963, § 322 (Administrative Procedures Act) provides, inter alia, that in any proceeding to review an agency order, the District Court in the exercise of proper judicial discretion or authority, may set aside the order if it determines that the substantial rights of the appellant have been prejudiced because the agency findings are made upon unlawful procedure.

It is our opinion that under the circumstances the Funeral Home was denied a full and fair hearing on this issue. We conclude that the judgment of the lower court, vacating the Board's order, was also correct as to this portion of said order.

Affirmed.

JACKSON, C. J., IRWIN, V. C. J., and BLACKBIRD, BERRY, LAVENDER, and McINERNEY, JJ., concur.

· WILLIAMS and HODGES, JJ., concur in result.