BOARD OF EXAMINERS OF VETER-
INARY MEDICINE, Plain-
tiff in Error,

v.

Charles A. MOHR, Jr., Defendant in Error.

No. 43027.

Supreme Court of Oklahoma.

May 18, 1971.

G. T. Blankenship, Atty. Gen., Sam Helman, Asst. Atty. Gen., Oklahoma City, for plaintiff in error.

James R. Eagleton, Oklahoma City, Henry L. Fist, Coleman Robison, Rosenstein, Livingston, Fist & Ringold, Tulsa, for defendant in error.

DAVISON, Vice Chief Justice.

This is an appeal by the Board of Examiners of Veterinary Medicine (herein referred to as Board) from the judgment of the lower court in favor of Charles A. Mohr, Jr., reversing a prior order of the Board in which the Board revoked the license of Mohr to practice veterinary medicine in the State of Oklahoma.

This controversy had its inception when a notice in the nature of a complaint was issued by the Board and served upon Mohr wherein Mohr was notified to appear and show cause why his license should not be revoked. The notice charged that Mohr, on six occasions, sold quantities of certain drugs to a named individual, which resulted in the conviction of Mohr in the United States District Court for the Northern District of Oklahoma. It was alleged that these acts by Mohr and his later conviction were in violation of 59 O.S.1961, § 689, of an Act regulating the practice of veterinary medicine, and rendered his license to practice subject to suspension or revocation.

The alleged dates and sales were as follows:

(1) September 29, 1965, 2000 capsules of secobarbital sodium;

(2) December 1, 1965, 2919 tablets of dl-amphetamine sulfate;

(3) May 3, 1966, 5201 tablets of dl-amphetamine sulfate;

(4) May 4, 1966, 5013 tablets of dl-amphetamine sulfate;

(5) May 7, 1966, 25,815 tablets of dl-amphetamine sulfate;

(6) July 28, 1966, 75,892 tablets of dl-amphetamine sulfate.

The procedure used and the hearing upon the notice were in accordance with the provisions of the Administrative Procedure Act, 75 O.S.Supp.1963, §§ 301–325.

The record, including the Information and conviction Judgment filed in the Federal Court, reflects that Mohr was charged in six counts (being the same as charged by the Board, supra) with violation of a United States criminal statute when he sold the drugs to a purchaser informer on the above dates; that Mohr entered a plea of Nolo Contendere to the charges; and that Mohr was found guilty of charges 3, 4, 5, and 6, which were the same as the last four charges made by the Board. Mohr was sentenced to one year on count 3, fined $1,000.00 on count 4, fined $500.00 on count 5, and suspended imposition of sentence and placed on probation on counts 5 and 6 for a period of three years. The parties agree that the conviction was for a misdemeanor and not for a felony. It appears also that counts 1 and 2 (those based on sales made September 29, and December 1, 1965) were dismissed because the federal statute had not yet become effective on those dates.

Mohr commenced serving the sentence, and soon thereafter a hearing was asked for and a hearing was had before the Fed-

eral Judge for the purpose of securing a modification of his sentence. It is clear that the Judge was impressed by the information and testimony given in Mohr's behalf, for it was the Judge's conclusion that the purpose of the incarceration and punishment imposed by the court had been accomplished, and in short that Mohr had been rehabilitated. The court then modified the one year sentence to thirty-six days.

At the hearing before the Board, Mohr freely admitted the sales and explained the early sales of amphetamine as being the result of a friendship he had struck up with the purchaser, who said he was using the drug to "hop-up his race horses." Mohr said his later sales were the results of threats made by the purchaser against him and his family. The record discloses that the purchaser had a long criminal record. Mohr testified that he had erred but, in effect, that his experience had effectively corrected any tendency to deviate from the course of conduct and practice required of a doctor of veterinary medicine. His witnesses also testified in his behalf as to a change for the better shown by him. It was developed on cross examination of Mohr that his Federal accreditation for testing cattle for bovine tuberculosis had been revoked in 1950, for failure to follow prescribed standards, and was restored in 1952, and was again revoked in 1958 and restored in 1961.

The Board, upon consideration of the evidence, revoked Mohr's license. The order by which this was done sets forth a verbatim statement of that portion of the original notice (except as hereinafter described) reciting the six sales, and that "These acts resulted in the conviction of the aforesaid licensee in the United States District Court * * *." The order then finds from the testimony and evidence that the proof established by a preponderance of the evidence "the facts alleged in the Notice," and found "as a conclusion of law, said facts constituted a violation of" 59 O.S.1961, § 689, "in that said licensee did commit malpractice and for having professional connection with or lending

ones name to any illegal practice or practitioner of veterinary medicine and the various branches thereof."

Section 689 does provide for revocation or suspension of a license to practice veterinary medicine for certain causes, including " * * *, malpractice, in any form, * * *, or for having professional connection with or lending one's name to any illegal practice of (or) practitioner of Veterinary Medicine and the various branches thereof."

At this place we point out that in the preparation of the order the last enumerated sale of drugs (designated No. 5) appears to be a combination of parts of charges 5 and 6 set forth in the original notice. The order does not describe a sale No. 6. We comment that while this may be explainable as a scrivener's error in preparing the order, the result is that the order describes a sale of drugs not set forth in the notice and not enumerated in the Information and sentence Judgment in the Federal Court and therefore not supported by the evidence. Also, the result of this circumstance was that the order did not effectively describe sales 5 and 6 with which Mohr was charged in the notice.

Mohr appealed to the District Court of Oklahoma County and that court, upon the record made before the Board, vacated and reversed the order revoking Mohr's license. The main reasons given by the court for vacation and reversal were that the order was insufficient because it did not contain a recitation of basic and underlying facts and sufficient findings; that Mohr was only convicted of a misdemeanor and that the evidence was insufficient to show malpractice; that the Board failed to consider the rehabilitation of Mohr; and that revocation of Mohr's license was too severe.

It is our conclusion that the lower court erred in reversing the Board's order. It should have vacated the order and remanded the matter to the Board for further proceedings and consideration.

We first consider the form of the order relative to lack of recitation of basic and

underlying facts and sufficient findings. The requirements in this respect are stated in State of Oklahoma, ex rel. Oklahoma State Board of Embalmers etc. v. Guardian Funeral Home, Okl., 429 P.2d 732, as follows:

"Findings of administrative agency acting in a quasi-judicial capacity should be a recitation of basic or underlying facts drawn from the evidence, and must be free from ambiguity which raises doubt as to whether board proceeded upon correct legal theory, and must be sufficiently specific under circumstances to enable reviewing court to intelligently review order and ascertain if facts upon which order is based afford reasonable basis for order."

■ In the present case the basic and underlying facts were the accounts of the six sales of drugs made by Mohr and his conviction in the Federal Court, all as recited in the notice, and in the order to the extent and in the form above described. In fact, a recitation thereof was a recitation of the very evidence which the Board found established such facts. We believe that this meets the requirement of a recitation of the basic and underlying facts drawn from the evidence.

■ We next consider the court's holding that Mohr was only convicted of a misdemeanor and the evidence was insufficient to show malpractice. As we understand Mohr's argument in support of the court's conclusion, it is his contention that the term "malpractice" means the failure of a member of the medical profession, employed to treat a case professionally, to fulfill the duty, which the law implies from the employment. He cites Richardson v. Doe, 176 Ohio St. 370, 199 N.E.2d 878, wherein this definition in expanded form was applied and in which "malpractice" as used in a statute of limitation, was limited to the medical profession and attorneys, and held not applicable to nurses. It appears to be Mohr's contention that "malpractice" should, in his case, be limited to failure on his part as a veterinary, to treat an animal with the required professional care.

We do not agree with this argument for several reasons. In the cited case the court was defining malpractice "in relation to the care of the human body," and was thereby giving a limited or special definition of the word in a particular situation.

Our statute, 59 O.S.1961, § 689, provides that the Board may revoke or suspend a license because of "malpractice, in any form."

In 54 C.J.S., p. 1111, malpractice is defined as follows:

" 'Malpractice,' sometimes called 'malapraxis,' is a term of broad significance. It is defined as any professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties; illegal or immoral conduct; improper or immoral conduct; misbehavior; wrongdoing; evil, bad, objectionable, or wrong practice; evil practices, acts, or doings; illegal or unethical practice; practice contrary to established rules; practice contrary to rules."

In Gregory v. McInnis, 140 S.C. 52, 134 S.E. 527, a state veterinary board refused to issue a veterinary license to a person who had previously practiced veterinary medicine, but was not a graduate of a recognized veterinary college, and who was applying for a license under a statutory exception in favor of prior practitioners. The board refused to issue the license on the ground that the applicant was guilty of "gross malpractice" because he had been convicted of violating a Federal narcotics statute and served a sentence in a United States penitentiary. The Supreme Court sustained the board and found that the facts were sufficient to show gross malpractice. The court cited in support thereof a definition of malpractice found in Corpus Juris that is substantially the same as that quoted above from Corpus Juris Secundum.

It is our opinion that the District Court erred in its conclusion that the evidence,

including conviction of the misdemeanor, was insufficient to show malpractice.

We now come to the District Court's conclusion that the Board failed to consider the rehabilitation of Mohr and that the revocation of his license was too severe.

■ ■ The authority of the District Court to arrive at these conclusions from review of the evidence and to use them as a ground to reverse the Board's order is controlled by 75 O.S.Supp.1963, § 322. Under this statute the District Court may set aside the order upon determining, among other things, that the order was clearly erroneous in view of the reliable, material, probative and substantial competent evidence disclosed by the record, but without substituting its judgment as to the weight of the evidence. From our examination of the evidence, as above related, we must conclude that there is substantial competent evidence in the record of malpractice on the part of Mohr. There was evidence of rehabilitation of Mohr by testimony of witnesses and by transcript of the Federal Court hearing in which Mohr's sentence was reduced. The Board undoubtedly considered this evidence as a possible extenuating circumstance. The District Court substituted its judgment for that of the Board as to the weight and effect of the evidence and it erred in doing so.

This brings us to a consideration of the provisions of the order in the light of the evidence.

As above stated, Mohr was charged with six sales of drugs and that "These acts resulted in the conviction, * * *" of Mohr in the Federal Court. The order recites the same charges and conviction (except for the apparent intermingling of charges 5 and 6), and finds that the proof sustains the charges. The proof does not sustain the finding that Mohr was convicted of the sales allegedly made September 29, 1965, and December 1, 1965, and set forth in charges 1 and 2. These were incorporated in the Federal Court information, but Mohr was not convicted on those two sales and it is conceded they were dismissed.

We have heretofore described and discussed the apparent mixing in the order of the language description of charges 5 and 6. This has the effect of describing a sale foreign to the original charges and foreign to the Federal conviction judgment.

■ The order additionally found that Mohr had professional connection with an illegal practice of veterinary medicine. This apparently has reference to the sale of drugs to the purchaser informer who said he was using them to "hop-up his race horses." This was first developed in the testimony of Mohr. It was not charged in the original notice as a charge and no attempt was made to amend the notice to include this as a charge. In State ex rel. Oklahoma State Board of Embalmers, etc. v. Guardian Funeral Home, supra, we held concerning administrative proceedings that, while the scope of a hearing should not be arbitrarily limited, the issues in an administrative proceeding are ordinarily limited to those raised by the pleadings.

From the above discussion, it appears that from the evidence and as a consequence of the form of the order, the two charges proved and set forth in the order are the sales set forth in charges 3 and 4.

■ In Guardian Funeral Home, supra, we said that where it is necessary to procure a license in order to carry on a chosen profession or business, the power to revoke a license, once granted, and thus destroy in a measure the means of livelihood, is penal and therefore should be strictly construed.

■ Under the statute, 59 O.S.1961, § 689, the power to revoke or suspend a license to practice Veterinary Medicine is vested in the Board. It is our opinion that under all of the circumstances presented here the order revoking Mohr's license should be vacated and the matter remanded to the Board for further proceedings.

The judgment of the District Court reversing the order of the Board whereby the license of Mohr was revoked is hereby vacated.

The order of the Board is hereby vacated and the matter is remanded to the Board for further proceedings.

BERRY, C. J., and WILLIAMS, BLACKBIRD, JACKSON, IRWIN, HODGES and LAVENDER, JJ., concur.

McINERNEY, J., concurs in that part of the opinion reversing the judgment and dissents from that part of the opinion vacating the order of the Board.