REQUESTED BY: Senator Peter Hoagland 1101 State Capitol Lincoln, Nebraska 68509
Dear Senator:
You have asked whether persons who sell personal property which has as its sole use the burial of deceased human remains are required to escrow the proceeds of such sales as provided in Neb.Rev.Stat. § 71-1342 (Supp. 1982). If not, you may went to consider new legislation to cover such sales.
Section 71-1342 provides in part:
 Whenever any person . . . makes an agreement with a funeral director, funeral firm, cemetery organization, or any person or organization . . . for the final disposition of the body of a person . . . wherein the use of personal property, under a prearranged funeral plan . . ., all payments made under the agreement, including interest and dividends, if any, shall be and remain trust funds until occurrence of the death of the potential decedent, unless the funds are sooner released upon demand to the depositor buyer, after written notice to the beneficiary seller.
(Emphasis added.) There is an exemption in subsection (e) for certain real and personal property, if delivered, and for prepayment of cremation or interment fees. This is discussed in our recent letter to the Department of Health, a copy of which is attached.
A `prearranged funeral plan' is not defined in the statute so it is to be given its usual and ordinary meaning.Ragland v. Norris Public Power Dist., 208 Neb. 492,304 N.W.2d 55 (1981). The Nebraska Supreme Court has not defined the term, but The American Heritage Dictionary of theEnglish Language defines each word separately. `Prearranged' means to plan or prepare for or to agree about at an earlier or prior time. A `plan' is a detailed scheme, program or method worked out beforehand for the accomplishment of an object. A `funeral' is the ceremonies held in connection with the burial or cremation of the dead.
Elements of a funeral were identified in Caswell v.Harry Miller Excavating Company, et al., 246 N.E.2d 921
(Ohio 1969), when the court had to determine whether given expenses were allowable as `funeral expenses.' Elements identified were embalming, purchase of a coffin, burial or cremation, customary rites or ceremonies attendant on disposition of remains, burial lots and vaults, and reasonable expenditures for flowers and a tombstone or marker. Supra
at 924.
An Oklahoma statute did define a `prearranged funeral service or plan for any person' in a statute prohibiting any licensed funeral home from acting as the principal in any contract for such a plan, i.e., `any funeral service or plan which is arranged, planned, or determined prior to the demise of the person' for whom the funeral service is to be performed. `Funeral service' was not defined.
That statute was interpreted in State ex rel. OklahomaBoard of Embalmers and Funeral Directors, et al., v. GuardianFuneral Home, 429 P.2d 732, (Oklahoma 1967). The court held that the funeral home had not violated that statute by entering into a contract whereby for $36.00 the funeral home agreed that on the death of the purchaser or anyone for whom she was legally or morally responsible it would furnish a standard funeral service and merchandise at a price not to exceed cost plus 10 percent. The court found such a plan was not a prearranged funeral service or plan because there was `no provision regarding selection and agreement as to the funeral merchandise (casket and accessories), or disposition of the remains, or as to any other parts of the service, and no agreement as to price (as distinguished from a very general method of determining the amount of charge.)' Supra, at 735.
From the above we have concluded that when a buyer enters an agreement with any person or organization for furnishing at an agreed price any of the personal property or services associated with a funeral for the disposition of the body of a person not yet deceased, except delivered property and services itemized in Neb.Rev.Stat. §71-1342(1)(e), any payments made by the buyer must go into an escrow fund as provided in Neb.Rev.Stat. § 71-1342(2) (Supp. 1982).
Sincerely yours,
PAUL L. DOUGLAS Attorney General
Marilyn B. Hutchinson Assistant Attorney General