**Billy PERRIN, d/b/a Hugo Livestock Commission, Inc., Appellee,**

v.

**STATE of Oklahoma, ex rel. OKLAHOMA BOARD OF AGRICULTURE, ANIMAL INDUSTRY DIVISION, Appellant.**

**No. 74,920.**

Court of Appeals of Oklahoma, Division No. 1.

Oct. 1, 1991.

Daniel J. Gamino, Oklahoma City, for appellant.

Robert Lee Rabon, Hugo, for appellee.

BAILEY, Judge:

Appellant State of Oklahoma, ex rel. Oklahoma State Board of Agriculture, Animal Industry Division (OSBA), seeks review of the Trial Court's order reversing OSBA's previous order imposing a $250.00 fine against Appellee Billy Perrin d/b/a Hugo Livestock Commission, Inc. (Perrin) for Perrin's alleged failure/refusal to allow inspection of records of a particular cattle transaction. Herein, OSBA asserts (1) the Trial Court exceeded its appellate jurisdiction granted by the Oklahoma Administrative Procedures Act, 75 O.S.1981 §§ 322, 323, in fact, substituting its judgment for that of OSBA, and (2) adequate evidentiary support for OSBA's imposition of fine against Perrin, dictating affirmance of OSBA's action.

The record reflects that Perrin owns and operates the Hugo Livestock Commission, which holds a weekly livestock auction each Friday. Many hundreds, sometimes thousands, head of cattle are delivered the day prior to the auction. These cattle are required to be tested for brucellosis as they go through the market, and records are kept of each test for inspection by OSBA agents. In fact, OSBA assigned an agent, Rita Chapin, on a full-time basis to each of Perrin's Friday auctions, and the agent had unrestricted access to Perrin's records.

Prior to July, 1988, four or five different OSBA agents approached Perrin at various times requesting various records. Perrin complained to members of the OSBA heirarchy that these requests disrupted his business and that OSBA could and should obtain sought-after records/information from the OSBA's "resident" agent, Ms. Chapin. While Perrin received no guarantees, the OSBA Chairman agreed to attempt to cooperate with Perrin's request to make records available in a manner calculated to minimize any disruption of Perrin's business. However, such was not to be.

On Thursday, July 7, 1988, the day before one of Perrin's weekly auctions, an OSBA agent, Bob Williams, approached Perrin demanding inspection of a particular record of a cow sold some four months previously. Perrin, noting a number of people requiring his assistance and some 250 head of cattle in immediate need of preparation for sale, directed Williams to see Ms. Chapin in accord with his "understanding" above noted. At this point, the parties' account of the occurrence diverges: Perrin testified that Williams then demanded that Perrin grant immediate access to the information or be "written up," while Williams asserted that Perrin then informed him that Perrin had no further interest in anything Williams had to say. Regardless, the encounter resulted in Perrin's citation for refusal to allow access to records.

Based on these facts, the OSBA trial examiner found Perrin guilty of the charged offense and imposed a $250.00 fine, and OSBA adopted the findings of the trial examiner. Perrin then sought District Court review. The Trial Court found the incident between Perrin and Agent Williams did not amount to a violation of either the spirit or intent of the governing statutes, and vacated OSBA's order. OSBA now appeals as aforesaid.

Oklahoma law provides in pertinent part: Every person operating or conducting a livestock auction market shall make and keep ... record[s] ... Such records shall be open to inspection during *reasonable* business hours by any special policeman employed by the [Appellant].

2 O.S. 1981 § 9–134. (Emphasis added). Section 1752 of Title 2 similarly provides that OSBA shall have access to examine the records of all livestock dealers within "*reasonable* working hours."

■ In that regard, we reject OSBA's allegations of error for at least two reasons. First, the record quite clearly details Perrin's odyssey through the channels of the OSBA buracracy to accommodate the needs of both parties, i.e., Perrin to operate his business efficiently, and OSBA to obtain necessary information to perform its statutory duties. To that end, Perrin consulted OSBA Chairman Jack Craig (who testified on Perrin's behalf), with whom Perrin struck an agreement balancing the interests of both parties and in accord with the above quoted statutes to provide OSBA access to Perrin's records during "*reasonable* business hours" not disruptive of Perrin's livestock auction. Having reviewed the administrative record, it appears obvious to this Court, and apparently so too to the District Court, that Perrin sought in advance to avoid the precise problem that led to his citation, and as observed by the Trial Court, that the entire incident resulted from a "misunderstanding and miscommunication." We consequently agree with the finding of the Trial Court that contrary to the OSBA findings below, no violation of either the spirit or intent of the relevant governing statutes arose from Perrin's charged conduct.

■ Second, findings of an administrative agency must be free from ambiguity to enable the reviewing court to ascertain if those facts afford a reasonable basis for the order. *State v. Guardian Funeral Home*, 429 P.2d 732 (Okl.1967); *Oklahoma Inspection Bureau v. Board of Property and Casualty Rates*, 406 P.2d 453 (Okl. 1965). In that regard, the administrative record reflects findings by the trial examiner, at one point that Williams "was denied access to such records," while at another, that Perrin was "not unwilling to release the requested information," and this patent ambiguity in the administrative record raises considerable doubt as to the grounds for the trial examiner's order. Under these facts and circumstances, we find no excess of jurisdiction, nor error by the Trial Court in reversing the OSBA's imposition of a fine against Perrin.

The order of the Trial Court vacating the order of the OSBA is therefore AFFIRMED.

GARRETT, P.J., and ADAMS, J., concur.