2010 OK CIV APP 39

**Dale McALARY and Pearl McAlary, Plaintiffs/Appellees,**

v.

**STATE of OKLAHOMA ex rel. Oklahoma DEPARTMENT OF HUMAN SERVICES; Howard Hendrick, Director of Oklahoma Department of Human Services; Oklahoma Health Care Authority; Mike Fogarty, Director of Oklahoma Health Care Authority; Howard Hendrick, individually; and, Gerry Moore, individually, Defendants/Appellants.**

No. 106,308.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 31, 2009.

Certiorari Denied March 29, 2010.

Michael W. Mitchel, Katresa J. Riffel, Craig Riffel, Jessica L. Caruthers, Mitchel, Gaston, Riffel & Riffel, PLLC, Enid, Oklahoma, for Plaintiffs/Appellees.

Travis Smith, Assistant General Counsel, Department of Human Services, Oklahoma City, Oklahoma, for Defendants/Appellants Oklahoma Department of Human Services, Howard Hendrick and Gerry Moore.

Lynn Rambo–Jones, Deputy General Counsel, Oklahoma Health Care Authority, Oklahoma City, for Defendants/Appellants Oklahoma Health Care Oklahoma Authority and Mike Fogarty.

DEBORAH B. BARNES, Presiding Judge.

¶ 1 The State of Oklahoma *ex rel.* Oklahoma Department of Human Services (OKDHS), Howard Hendrick, Director of OKDHS, Oklahoma Health Care Authority (OHCA),[1] Mike Fogarty, Director of OHCA, and Gerry Moore, individually, (collectively, the State) appeal the trial court's September 18, 2008, Order Granting Plaintiffs' Motion for Partial Summary Judgment in which the trial court found Dale McAlary and Pearl McAlary, husband and wife (McAlarys), were improperly denied Medicaid benefits and issued an injunction preventing the State from denying Medicaid benefits to McAlarys and those similarly situated.[2]  We reverse.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On January 2, 2008, McAlarys moved from an assisted living facility to the Vici Nursing Home in Vici, Oklahoma.  On January 8, 2008, McAlarys' daughter, Sandra Elliott (Daughter), created the McAlary Family Trust (the Trust).[3]  McAlarys are beneficiaries of the Trust during their lifetimes, and when they are both deceased, the remainder will be evenly divided among their three children, including Daughter.  Daughter, as trustee of the Trust, is authorized to use the entire corpus and income at any time for the benefit of her parents during their lifetimes. As stated by Daughter in Article III of the Trust:

> It is my desire, by this instrument, to create a trust in accordance with the laws of the State of Oklahoma whereby property placed in this trust shall be managed for the benefit of Beneficiaries during Beneficiaries' lifetimes and distributed to the remainder beneficiaries named herein upon Beneficiaries' deaths.  My primary pur-

---

1.  OHCA is the state agency designated to operate Oklahoma's Medicaid program.

2.  In their March 25, 2008, Petition, McAlarys sought class certification for similarly situated Medicaid applicants.  Administrative Record (AR), file # 1, p. 7. The record fails to unequivocally impart the outcome or status of McAlarys' class certification quest.  However, in the State's Brief in Support of Application to Assume Original Jurisdiction and Petition for Writ of Prohibition, on p. 3, the State avers that:

> On September 9, 2008, the McAlarys' Motion for Class Certification and Motion for Partial Summary Judgment came on for hearing before [the trial court].  Prior to hearing on the Motion for Class Certification, the parties agreed that they would be bound by the outcome of the final legal decision regarding the underlying Medicaid eligibility issue
> .... Therefore, the Motion was held in abeyance.         .

Although the trial court has *already* enjoined the State, in the appealed Order, from denying Medicaid benefits to "those similarly situated," it appears that the Motion for Class Certification is in abeyance pending the final legal decision on the Medicaid eligibility issue.

3.  AR, file # 5, p. 722.

pose of this trust is to provide funds to be spent on behalf of the Beneficiaries. It is my intention to benefit the Beneficiaries to the fullest extent possible rather than the remainder beneficiaries.[4]

McAlarys, in their brief filed on January 20, 2009, state that Daughter did not establish the Trust at the direction or upon the request of McAlarys; instead, she established the Trust upon her own volition and in her individual capacity because she wanted to do some planning to benefit her parents.[5] However, at the administrative level it was found that Daughter established the Trust in her capacity as attorney in fact for McAlarys.[6]

¶ 3 On January 21, 2008, Daughter transferred $178,030 of McAlarys' money and property to the Trust. In return, McAlarys received a promissory note signed by Daughter in her capacity as trustee. The promissory note stated that the $178,030, plus four percent interest, would be repaid in six yearly installments of $29,671.76, beginning on January 8, 2009. However, the promissory note was unsecured and contained the following provision:

This is a non-recourse note. Notwithstanding anything to the contrary in this note, the Borrower shall not have any personal liability for payment of this note or any sums due hereunder, and the Lender and all subsequent holders shall look solely to the payments hereunder for payment and satisfaction of all sums due under this note.[7]

¶ 4 On January 22, 2008, McAlarys filed a Medicaid application with OKDHS. In a letter dated March 18, 2008, OKDHS denied both applications because it found McAlarys had "countable resources in excess of $2,000 on the date of application and for the 90 days preceding."[8] On March 19, 2008, McAlarys filed a Request for a Fair Hearing.

¶ 5 A hearing was held on June 4, 2008.[9] McAlarys argued at the hearing that their promissory note was unmarketable and had no value.[10] On June 19, 2008, the OKDHS Appeals Committee issued a decision in which it found OKDHS acted correctly in denying McAlarys' Medicaid applications because they had countable resources worth $178,030. The Appeals Committee found, in the alternative, that if the $178,030 in the Trust was not a countable resource of McAlarys, then when McAlarys proved their promissory note had no value, they proved, by extension, that they had made a transfer of $178,030 without receipt of fair market value.

¶ 6 On June 20, 2008, pursuant to 56 O.S. 2001 § 168(C), McAlarys requested that Howard Hendrick, Director of OKDHS (Director Hendrick), review the hearing decision. On July 18, 2008, Director Hendrick issued his decision. Director Hendrick concluded that the Trust was an available resource to McAlarys and the promissory note had no value. Director Hendrick stated, in part, that:

[Daughter] is authorized to exhaust the Trust's corpus and income for the benefit of [McAlarys] during their lives. According to [Oklahoma Administrative Code (OAC)] 317:35–5–41.6(5)(C), whether the Trust is revocable or irrevocable, the entire $178,030 corpus is considered an available resource to them. According to OAC 317:35–19–20(2)(B), each of the McAlarys is allocated $89,015, half of the $178,030. This exceeds the $2,000 Medicaid resource limit. After Mr. McAlary died, all of the corpus became [Pearl] McAlary's.

Director Hendrick also stated:

If the Trust is a countable resource and the [promissory note] is worthless, then the [promissory note] should be considered a nullity because it has no practical effect. The McAlarys will benefit from the Trust either by payments to them directly, or for their benefit as Trust beneficiaries, or they

---

4.  AR, file # 4, p. 128.

5.  "Plaintiffs/Appellees' Brief in Chief," pp. 5, 21.

6.  AR, file # 5, p. 722.

7.  AR, file # 4, p. 139.

8.  AR, file # 4, p. 771.

9.  Dale McAlary passed away prior to this hearing.

10.  AR, file # 5, p. 723.

will benefit from the Trust when [Daughter] makes payments of corpus and income to them as payments on the [promissory note].

Director Hendrick concluded:

I find that OKDHS acted correctly in denying Mr. and Mrs. McAlary's Medicaid applications. The denial can be made on four separate grounds, as described above. Based on my conclusion that the Trust is an available resource and that the [promissory note] has no value, the Trust corpus constituted a countable resource to Mr. and Mrs. McAlary until his death and to Mrs. McAlary alone thereafter.[11]

Director Hendrick's decision was the final decision at the administrative level. *See* 56 O.S.2001 § 168(C).

¶ 7 Pursuant to 56 O.S.2001 § 168(D), McAlarys appealed the OKDHS decision to the District Court of Dewey County by filing their Petition on March 25, 2008. In the trial court's September 18, 2008, Order Granting Plaintiffs' Motion for Partial Summary Judgment, the trial court found McAlarys were improperly denied Medicaid benefits and issued an injunction preventing the State from denying Medicaid benefits to McAlarys and those similarly situated. From this Order of the trial court, the State appeals.[12]

## STANDARD OF REVIEW

¶ 8 Once an administrative agency order is before us, the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.2001 and Supp. 2005 §§ 250–327, governs our review. *Pharmcare Oklahoma, Inc. v. State of Oklahoma Health Care Authority,* 2007 OK CIV APP 5, 152 P.3d 267.[13] Under the OAPA, the trial court, the Oklahoma Court of Civil Appeals, and the Oklahoma Supreme Court apply the same standard of review to the administrative record. *Id.; City of Tulsa v. State. of Oklahoma ex rel. Public Employees Relations Board,* 1998 OK 92, 967 P.2d 1214.[14]

¶ 9 Generally, an administrative decision should be affirmed if it is a valid order and the administrative proceedings are free from prejudicial error. 75 O.S.2001 § 322(3).[15] An administrative order is subject to reversal, however, if an appealing party's substantial rights are prejudiced because the agency's decision is entered in excess of statutory authority or jurisdiction, or an order is entered based on an error of law. 75 O.S.2001 § 322(1)(b) and (d). Reversal is also appropriate if the agency's findings are clearly erroneous in view of the "reliable, material, probative and substantial competent evidence" in the record. 75 O.S.2001 § 322(1)(e). As to factual questions, neither a trial court nor this Court is entitled to substitute its judgment for that of the agency as to the weight of the evidence. *Id.; Board of Examiners of Veterinary Medicine v. Mohr,* 1971 OK 64, 485 P.2d 235.

---

11. AR, file # 5, pp. 727–729. Director Hendrick also stated that "if the Trust is found to be unavailable and/or the [promissory note] is found to be worthless, then the OKDHS denial would still be correct, for the reasons stated above." However, this was not his conclusion. Director Hendrick's conclusion was, in short, that the $178,030 was an available resource despite having been moved to the Trust and, because this placed McAlarys well beyond the $2,000 Medicaid resource limit, the denial of the McAlarys' Medicaid applications was proper.

12. On September 29, 2008, the State filed an application for the Oklahoma Supreme Court to assume original jurisdiction and issue a writ of prohibition preventing the trial court judge (or any other assigned judge) from enforcing the injunction issued against the State while the case proceeds on appeal. In an Order filed on January 26, 2009, the Oklahoma Supreme Court denied the State's application, stating "12 O.S.

§§ 66 and 990.5 do not authorize an automatic stay of the injunction in this cause. The trial judge did not abuse his discretion in denying [the State's application] pending appeal." (Citations omitted.)

13. "[T]he clear intent of the Legislature in adopting the Administrative Procedures Act was to provide a uniform method of appeal from decisions of the various regulatory agencies and boards." *Lowry v. Board of Chiropractic Examiners,* 1981 OK 80, ¶ 8, 631 P.2d 737, 738–39.

14. As a result, this Court reviews the agency's decision, not the trial court's. *Id.*

15. We may not disturb the decision of an administrative agency "unless our review of the record leads us to a firm conviction that the agency is mistaken." *Carpenters Local Union No. 329 v. State of Oklahoma ex rel. Dep't of Labor,* 2000 OK CIV APP 96, ¶ 3, 11 P.3d 1257, 1259.

¶ 10 We must accord great weight to the expertise of an administrative agency. *City of Hugo v. State of Oklahoma ex rel. Public Employees Relations Board,* 1994 OK 134, 886 P.2d 485. We may not substitute our judgment for that of the agency, and this holds true particularly in the area of the agency's expertise. *City of Midwest City v. Public Employees Relations Board,* 2003 OK CIV APP 36, 69 P.3d 1218.

## ANALYSIS

¶ 11 The State argues that the $178,030 of McAlarys' money and property placed by Daughter into the Trust is an available resource to McAlarys, placing them well above the relevant resource limit and thereby disqualifying them from Medicaid eligibility in Oklahoma. This is consistent with the conclusion reached at the administrative level. In opposition, McAlarys argue that the $178,030 located in the Trust is not an available resource to them.[16]

### *McAlarys' Attempt to Supplement the Record*

¶ 12 McAlarys argue they are entitled to introduce additional evidence on appellate review in the form of an affidavit attached to their brief because the State allegedly did not raise the issue of whether the Trust assets are a countable (i.e., "available") resource during the entire administrative process. In support, McAlarys cite to 75 O.S.2001 § 321, which states:

> The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

McAlarys' attempt to supplement the record before this Court is not supported by § 321.

16. Although the State offers an alternative argument to which McAlarys respond, we find the issue of whether the Trust is an available resource is dispositive. *See* n. 25, below.

17. AR, file # 4, p. 771.

Section 321 applies to the trial court-hence the reference to "a jury" and to "testimony." Absent a statute requiring otherwise, this Court will not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court. *City of Lawton v. International Union of Police Associations, Local 24,* 2002 OK 1, ¶ 7 n. 15, 41 P.3d 371, 375 n. 15. (Citations omitted.) A deficient record may not be supplemented by material physically attached to a party's appellate brief. *Id.* at n. 16.

¶ 13 Furthermore, the issue McAlarys allege was never raised by the State—whether the Trust assets are an available resource—was present from the first stage of the administrative process when OKDHS denied McAlarys' applications for this very reason.[17] In addition, it was present at the final stage of the administrative process because it received extensive treatment in the July 18, 2008, decision by Director Hendrick. In that decision,[18] Director Hendrick states:

> On July 10, 2008, you, as counsel for the McAlarys, were contacted by an OKDHS employee who was working with me on this decision. You were informed that the Trust was going to be treated as an available resource in this decision ... [and] you were given excerpts dealing with the Trust from a draft of this decision and asked if you wished to submit comments. You declined.

"Parties to an action on appeal are not permitted to secure a reversal of a judgment upon error which they have invited, acquiesced or tacitly conceded in...." *Samedan Oil Corporation v. Corporation Commission of the State of Oklahoma,* 1988 OK 56, ¶ 7, 755 P.2d 664, 668. "[T]his is a well-settled rule which emanates from the very heart of the purpose served by an appeal." *Id.* McAlarys waived appellate relief as to this alleged error of their own accord.[19]

18. AR, file # 5, p. 723.

19. We note that hearings at the administrative level to determine eligibility for Medicaid are "conducted in an informal manner without formal rules of evidence or procedure." OAC 317:2–1–5. Appeals from determinations made

### The Trust as an Available Resource to McAlarys

¶ 14 Prior to turning to the specific Oklahoma Administrative Code (OAC) sections which govern Medicaid eligibility in Oklahoma, it is important first to set forth the purpose and objective of the federal Medicaid Act. While a state is not obliged to participate in a Medicaid program, if it does participate, it must operate its program in compliance with the federal Medicaid Act. *Pharmcare Oklahoma, Inc. v. State of Oklahoma Health Care Authority,* 2007 OK CIV APP 5, 152 P.3d 267. "States do, however, have broad discretion to adopt standards for determining the extent of medical assistance, with the Act requiring only that the standards be reasonable and consistent with the objectives of the Medicaid Act." *Id.* at ¶ 12 (citing 42 U.S.C. § 1396a(a)(17)).[20]

¶ 15 "Congress established the Medicaid program in 1965 as Title XIX of the Social Security Act ... to provide federal financial assistance to States that choose to reimburse certain medical costs incurred by the poor." *Blum v. Yaretsky,* 457 U.S. 991, 993–994, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). (Citation omitted.) Medicaid was created by Congress "[f]or the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, *whose income and resources are insufficient to meet the costs of necessary medical services ....*" 42 U.S.C. § 1396. (Emphasis added.) Hence, Medic-

aid is a welfare program and its fundamental objective is to provide medical services for the poor. *See Zelman v. Simmons–Harris,* 536 U.S. 639, 667, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002) (O'Connor concurring); *Soskin v. Reinertson,* 353 F.3d 1242 (10th Cir.2004). "[Medicaid] is a cooperative program of the state and federal governments that provides medical assistance *for the poor.*" *Pharmcare Oklahoma, Inc.,* at ¶ 12, 152 P.3d at 269. (Emphasis added.) Therefore, the specific OAC sections which we will apply in determining whether McAlarys are eligible for Medicaid payments in Oklahoma must be reasonable and consistent with the fundamental objective of providing medical assistance for the poor.

¶ 16 Oklahoma's Medicaid program is set forth in Title 317 of the OAC, 317:35–1—317:35–23. In order for an individual to receive payment for medical services under Oklahoma's Medicaid program, he or she must meet the relevant eligibility requirements found therein. OAC 317:35–1–1.

¶ 17 As determined at the administrative level pursuant to OAC 317:35–19–21(2)(B), McAlarys' individual resource limit is $2,000.[21] If McAlarys' individual resources exceed this amount, then they are ineligible for Medicaid payments. OAC 317:35–19–21(2) explains how the resources of a couple such as the McAlarys are to be allocated. In pertinent part, § 317:35–19–21(2) states that "resources are determined for each individual as the amount owned by each individual plus one-half of the jointly owned resources of the couple." If it is determined that the

---

upon completion of such informal hearings are limited to "a record review at which the parties do not appear." OAC 317:2–1–2(a)(6).

**20.** States that opt in and establish a Medicaid program must nevertheless follow the mandatory provisions found in the federal Medicaid Act, 42 U.S.C. § 1396. For example, it is a basic canon of statutory construction that use of the word "shall" indicates a mandatory intent. *Keith v. Rizzuto,* 212 F.3d 1190, 1193 n. 3 (10th Cir. 2000). (Citation omitted.) In sum:

Each participating State develops a plan containing reasonable standards ... for determining eligibility for and the extent of medical assistance. An individual is entitled to Medicaid if he fulfills the criteria *established by the*

*State in which he lives.* [Nevertheless] *State Medicaid plans must comply with requirements imposed both by the Act itself and by the Secretary of Health and Human Services....*
*Ramey v. Reinertson,* 268 F.3d 955, 957 (10th Cir.2001) (emphasis added) (citing *Schweiker v. Gray Panthers,* 453 U.S. 34, 36–37, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981)).

**21.** AR, file # 5, p. 724. According to the State, "resource" is the term used by Medicaid for what is commonly referred to as an asset. Brief-in-chief, p. 2 n. 1. In determining whether a person qualifies for Medicaid, that person's "resources" are calculated to determine whether they exceed the resource limit, and certain resources are specifically exempted. *See* OAC 317:35–5–40–317:35–5–49.

Trust is an available resource to McAlarys, then each spouse will own $89,015, or one-half, of this joint resource, placing each of them $87,015 above the $2,000 resource limit and thereby disqualifying them from eligibility for Medicaid payments. This resource limit is reasonable and consistent with the fundamental objective of Medicaid.

¶ 18 Determination of whether the Trust is an available resource to McAlarys begins with determining whether McAlarys "established" the Trust. OAC 317:35-5-41.6(5), which applies to trust accounts established after August 10, 1993, states, in part:

(A) ... An individual is considered to have established a trust if assets of the individual were used to form all or part of the principal of the trust and if the trust was established other than by will and by any of the following individuals:

(i) the individual;

(ii) the individual's spouse;

(iii) a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse; or

(iv) a person, including a court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse.

(B) Where trust principal includes assets of an individual described in this subparagraph and assets of any other person(s), the provisions of this subparagraph apply to the portion of the trust attributable to the assets of the individual. This subparagraph applies without regard to the purposes for which the trust is established, whether the trustees have or exercise any discretion under the trust, and restrictions on when or whether distributions may be made from the trust, or any restrictions on the use of the distribution from the trust.

The above OAC language does not require that the individual or the individual's spouse establish the trust. Rather, the OAC states that even if a trust is established by a person with legal authority to act in place of or on behalf of the individual, or even if a trust is established by a person acting at the direction or upon the request of the individual, the individual will be considered to have established the trust.

¶ 19 The Trust was established by Daughter. Evidence that Daughter acted on behalf of McAlarys as their attorney in fact includes Daughter's statement in Article III of the Trust that her primary purpose in establishing the Trust was to provide funds to be spent on behalf of McAlarys, and it was her intention to benefit McAlarys to the fullest extent possible rather than the remainder beneficiaries. Additionally, within just two weeks of establishing the Trust, it was funded by $178,030 of McAlarys' own money and property (on January 21, 2008). Furthermore, *just one day after* the $178,030 was placed in the Trust (on January 22, 2008), McAlarys applied for Medicaid. The administrative agency found that when Daughter established the Trust, she was acting on behalf of McAlarys as their attorney in fact. In view of the "reliable, material, probative and substantial competent evidence" in the record, this finding is not clearly erroneous. 75 O.S.2001 § 322(1)(e). Therefore, since the record supports the finding that Daughter acted on behalf of McAlarys, we must consider McAlarys to have established the Trust. OAC 317:35-5-41.6(5).[22] We must accord

---

**22.** For this reason, McAlarys' reliance on *Trust Company of Oklahoma v. State of Oklahoma ex rel. Dept. of Human Services*, 1991 OK 133, 825 P.2d 1295, is misplaced. That is, in *Trust Company of Oklahoma*, the trust was not deemed to have been established by the beneficiary, a young girl injured in a car accident; instead, the trust was established by the tortfeasor responsible (or partly responsible) for the young girl's injuries. See *Trust Company of Oklahoma*, at ¶ 11 n. 31, 825 P.2d at 1303 n. 31. The Oklahoma Supreme Court held that, in such a situation (*i.e.*, where the trust is *not* considered to have been established by the beneficiary), a trust created for the primary purpose of providing nonmedical support, and containing a provision allowing the trustee discretion to provide medical care if the beneficiary ceases to qualify for medical assistance programs, is not an "available resource." Here, however, the record supports the administrative finding that McAlarys, beneficiaries of the Trust, established the Trust themselves via their Daughter. Second, *Trust Company of Oklahoma* was decided several years before OAC 317:35 *et seq.* was added to the Oklahoma Administrative Code, including the sections utilized in this Opinion. Third, the Trust was not explicitly created for the primary purpose of providing nonmedical support as was the case in *Trust Company of*

great deference to the factual findings and conclusions of an administrative agency. 75 O.S.2001 § 322(1)(e); *Board of Examiners of Veterinary Medicine v. Mohr,* 1971 OK 64, 485 P.2d 235. Even if competent evidence exists in opposition to a factual finding, this Court is not entitled to substitute its judgment for that of the agency as to the weight of the evidence. *Id.* Moreover, we must accord great weight to the expertise of an administrative agency. *City of Hugo v. State of Oklahoma ex rel. Public Employees Relations Board,* 1994 OK 134, 886 P.2d 485.

¶ 20 Having determined that McAlarys must be considered to have established the Trust, we must now focus on the Trust itself to determine if it was an "available resource" to McAlarys. OAC 317:35–5–41.6(5) states, in pertinent part:

> (C) There are two types of trusts, revocable trusts and irrevocable trusts.
>
> (i) In the case of a revocable trust, the principal is considered an available resource to the individual. Home property in a revocable trust under the direct control of the individual, spouse or legal representative retains the exemption as outlined in OAC 317:35–5–41.8(a)(2). Payments from the trust to or for the benefit of the individual are considered income of the individual. Other payments from the trust are considered assets disposed of by the individual for purposes of the transfer of assets rule and are subject to the 60 months look back period.
>
> (ii) In the case of an irrevocable trust, if there are any circumstances under which payments from the trust could be made to or for the benefit of the individual, the portion of the principal of the trust, or the income on the principal, from which payment to the individual could be made is considered available resources. Payments from the principal or income of the trust is considered income of the individual. Payments for any other purpose are considered a transfer of assets by the individual and

are subject to the 60 months look back period. Any portion of the trust from which, or any income on the principal from which no payment could under any circumstances be made to the individual is considered as of the date of establishment of the trust (or if later, the date on which payment to the individual was foreclosed) to be assets disposed [of] by the individual for purposes of the asset transfer rules and are subject to the 60 months look back period.

Under this language it is unnecessary to determine whether the Trust is revocable or irrevocable. Either way, the Trust is an available resource to McAlarys. If the Trust is a revocable trust, then the $178,030 simply "is considered an available resource to [McAlarys]." If the Trust is an irrevocable trust, then the $178,030 is also an available resource to McAlarys because there are circumstances under which payment of all of the $178,030 from the Trust could be made to or for the benefit of McAlarys. Once again, as stated by Daughter in Article III of the Trust:

> It is my desire, by this instrument, to create a trust . . . whereby property placed in this trust shall be managed for the benefit of [McAlarys] during [McAlarys'] lifetimes and distributed to the remainder beneficiaries named herein upon [McAlarys'] deaths. My primary purpose of this trust is to provide funds to be spent on behalf of [McAlarys]. It is my intention to benefit [McAlarys] to the fullest extent possible rather than the remainder beneficiaries.

Therefore, the $178,030 in the Trust is an available resource to McAlarys. As stated above, this places them well above the applicable Medicaid resource limit, thereby disqualifying them from Medicaid eligibility.

¶ 21 The specific sections of the OAC requiring this result are reasonable and consistent with the fundamental objective of Medicaid to serve the poor. Furthermore, these specific sections follow the mandatory requirements set forth in 42 U.S.C. § 1396p(d).

*Oklahoma.* For these reasons, *Trust Company of Oklahoma* is not persuasive on the facts present- ed.

"The legislative purpose behind § 1396 is clear from the language of the statute. Congress required that states generally count trust assets ... for purposes of determining Medicaid eligibility...." *Keith v. Rizzuto*, 212 F.3d 1190, 1193 (10th Cir.2000).[23] The "available asset rule," as set forth in § 1396, "is consistent with Congress's intent to strictly limit Medicaid payments to the 'truly needy.'" *Gayan v. Illinois Dept. of Human Services*, 342 Ill.App.3d 1035, 277 Ill.Dec. 571, 796 N.E.2d 657, 661 (2003) (citing *Cherry by Cherry v. Sullivan*, 30 F.3d 73, 75 (7th Cir.1994)).[24]

■ ¶ 22 We must "affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error...." 75 O.S.2001 § 322(3). Finding no prejudicial error at the administrative level, we reverse the Order of the trial court.[25]

## CONCLUSION

¶ 23 For the reasons set forth, we reverse the Order of the trial court and reinstate the administrative decision "that OKDHS acted correctly in denying [McAlarys'] Medicaid applications." If the OHCA determines an overpayment has been made as a result of the injunction issued by the trial court, it may institute a recoupment procedure pursuant to OAC 317:35–13–5(b)(1).[26]

¶ 24 **REVERSED.**

WISEMAN, V.C.J., and GOODMAN, J., concur.

---

23. Nevertheless, Congress exempted certain "income trusts" from this requirement. *Id.* In Oklahoma, OAC 317:35–5–41.6(6) lists certain exempt trusts, but none are applicable to this appeal.

24. "[I]n 1986, Congress reiterated its intent that Medicaid was designed to provide basic medical care for those without sufficient income or resources to provide for themselves and thus passed 42 U.S.C. § 1396a(k)." *Ramey v. Reinertson*, 268 F.3d 955, 958 (10th Cir.2001). Section 1396a(k) was known as the MQT statute because it worked to include Medicaid qualifying trusts (MQTs) into the calculation of available resources. *Id.* With its passage, "MQTs were no longer a permissible means to shelter assets for purposes of Medicaid eligibility." *Id.* at 959. In the years that followed:

> Congress remained true to its conviction that MQTs were an impermissible means of sheltering assets for purposes of Medicaid eligibility. In fact, in 1993, § 1396a(k) was repealed by Congress and replaced by another statute *even less forgiving* of such trusts. See 42 U.S.C. § 1396p(d) (1993). This statute added stringent criteria regarding the treatment of MQTs....

*Id.* (Citation omitted, emphasis added.)
Section 1396p(d) is still in effect in the federal Medicaid Act, and it is currently followed in Oklahoma under OAC 317:35–5–41.6(5), as reflected in this Opinion.

25. Having found that the $178,030 placed in the Trust is an available resource to McAlarys, we need not address the second issue raised on appeal: whether the placement of the $178,030 in the Trust was a transfer without receipt of fair

market value despite the fact that McAlarys received a promissory note in return. Our determination that the money is an available resource to McAlarys renders resolution of this second issue unnecessary. Furthermore, as determined by Director Hendrick upon finding the Trust to be an available resource, "the [promissory note] should be considered a nullity because it has no practical effect." AR, file # 5, p. 728. We must accord great weight to the expertise of an administrative agency. *City of Hugo v. State of Oklahoma ex rel. Public Employees Relations Board*, 1994 OK 134, 886 P.2d 485. Finally, determination of the second issue hinges on Constitutional law; specifically, on the Supremacy Clause of the United States Constitution and whether and to what extent certain federal Medicaid sections preempt certain allegedly conflicting sections of the OAC. The general rule is that where legal relief is available on alternative, non-constitutional grounds, we avoid reaching a determination on the constitutional basis. *Pharmcare Oklahoma, Inc.*, 2007 OK CIV APP 5, ¶ 35, 152 P.3d 267. Based on this general rule and on the reasons stated above, we decline to reach this issue.

26. OAC 317:35–13–5 is entitled "Overpayments." OAC 317:35–13–5(b) states:

> When it is determined that an incorrect payment has been made due to OHCA error, provider error or fiscal agent processing error, the procedures for correcting the payment errors are:
> (1) When the OHCA determines an overpayment has been made, automatic offset recoupment procedures are processed through

the claims processing contractor. This process is followed when the overpayment is discovered by the OHCA or the fiscal agent. Any payments made pursuant to the injunction issued by the trial court are tantamount to incorrect payments made "due to OHCA error, provider error or fiscal agent processing error," and, therefore, a recoupment procedure may commence, as set forth above, to recover any "overpayments." This is consistent with McAlarys' position that, "[i]f [the trial court's] decision is ultimately reversed upon appeal, [the State has] a right to recover benefits from McAlarys and the Trust established for their support. [The State] will not be .harmed in any way by the immediate enforcement of [the trial court's] Order." McAlarys' Response to Petitioners' Application to Assume Original Jurisdiction, p. 5.