2007 OK CIV APP 5

**PHARMCARE OKLAHOMA, INC. and Pharmcare Oklahoma Tulsa, Inc., Plaintiffs/Appellants,**

v.

**STATE of Oklahoma HEALTH CARE AUTHORITY, Defendant/Appellee.**

No. 100,429.

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 29, 2006.

Certiorari Denied Jan. 9, 2007.

Larry Derryberry, Stephen McCaleb, Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, OK, for Appellants.

Howard J. Pallotta, General Counsel, Oklahoma Health Care Authority, Oklahoma City, OK, for Appellee.

David L. Smith, Oklahoma Pharmacists Association, Oklahoma City, OK, for Amicus Curiae.

JERRY L. GOODMAN, Judge.

¶ 1 Pharmcare Oklahoma, Inc. and Pharmcare Oklahoma Tulsa, Inc. (collectively, Pharmcare) appeals the trial court's February 4, 2004, order which affirmed the decision of the Oklahoma Health Care Authority (OHCA) requiring recoupment of funds paid to Pharmcare pursuant to Oklahoma's Medicaid program. Based upon our review of the facts and applicable law, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

¶ 2 Pharmcare is a closed-door pharmacy which serves nursing home and other long-term care patients. Closed-door pharmacies are pharmacies which are not open for retail business. The OHCA is the state agency designated to operate Oklahoma's Medicaid program.

¶ 3 On November 29, 2001, Pharmcare received a letter from the Surveillance and Utilization Review Unit (SURS) of the OHCA.[1] The letter notified Pharmcare that a post-payment desk audit had been performed on its services provided to Medicaid recipients through its contract with the OHCA for the period of July 1, 1999, through September 30, 2001. During the period identified by SURS, Pharmcare had provided sterile water to nursing home patients using oxygen concentrators or humidifiers. Pharmcare received reimbursement for the provision of sterile water from the OHCA pursuant to its average wholesale price (AWP). The letter provided the AWP for sterile water had been inflated by the manufacturer, that it did not accurately reflect the estimated acquisition cost (EAC), and that the price had now been adjusted to the state maximum allowable cost (SMAC). In addition, the letter provided that as a result of Pharmcare's billing practices, documentation failures, and inappropriate billings, Pharmcare's services were noncompensable. SURS demanded recoupment in the amount of $116,249.48. Pharmcare immediately disputed SURS' contentions, asserting it could not be overcharging when the reimbursement rate for sterile water was set by the OHCA.

¶ 4 On December 6, 2001, Pharmcare received a second letter from SURS which identified an overpayment of $139,465.72 for billing associated with sterile water.[2] Pursuant to Oklahoma Administrative Code (OAC) 317:30–5–211(E)(i), SURS asserted the monthly rental payment for oxygen systems included all contents and supplies, including sterile water. Pharmcare replied on January 31, 2002, again disputing SURS' contention. Pharmcare asserted sterile water could not be covered under the rental payment for oxygen systems because it could only be provided by prescription, which could only be filled by a pharmacist under Oklahoma law.

¶ 5 Pharmcare received a third letter from SURS on February 4, 2002, which identified recoupment in the amount of $319,996.16.[3] The letter provided:

> While we still believe that sterile water should not be submitted for billing in conjunction with oxygen concentrators and/or humidifier [sic] based on the above policy reference, we have also identified additional issues during our fieldwork. We identified the sterile water was not physician ordered and/or medically necessary.

Pharmcare filed a protest on February 25, 2002.

¶ 6 On February 20, 2002, SURS, as part of its post-payment audit of Pharmcare, requested information from various nursing homes that Pharmcare provided prescription services. The directors of the nursing homes were requested to review the identified Medicaid recipients' medical records for the designated date range and to indicate whether a written physician's order for sterile water to be used with an oxygen concentrator was in the file and if so, to produce the order and corresponding medical documentation. For those patients with an order for sterile water, the OHCA submitted the documentation to

1. The first letter was directed to Pharmcare Oklahoma, Inc.

2. The second letter was directed to Pharmcare Oklahoma, Inc.

3. The third letter was directed to Pharmcare of Tulsa. The total recoupment sought against Pharmcare collectively was $459,461.88.

its physician consultant for further review. The OHCA also reviewed articles on sterile water usage in humidifiers, conducted site visits at nursing homes, and reviewed oxygen concentrator's manufacturer's written materials.

¶ 7 On May 6, 2002, Pharmcare's request for reconsideration was denied by SURS for the following reasons: 1) no physician prescription or order for sterile water was contained in the patients' medical records; 2) for those patients with a prescription or order, the lack of medical necessity for the sterile water; and 3) billing for deceased or personal care patients.[4]

¶ 8 Pharmcare appealed this decision to the OHCA. On July 18, 2002, a hearing was held before the Medical Advisory Committee (MAC). By a vote of six (6) to one (1), MAC recommended the SURS' decision be reversed.[5] On July 31, 2002, the State Medicaid Director (Director) rejected the MAC's recommendation and upheld the SURS' decision requiring recoupment. Pharmcare appealed this decision to the OHCA's Chief Executive Officer (CEO) who, on September 2, 2002, remanded the decision to the Director for findings of fact and conclusions of law. The Director complied and on September 18, 2002, issued an order finding sterile water is a drug that can only be dispensed by a pharmacist pursuant to a prescription. However, the Director determined that in most instances the sterile water was not physician-ordered or medically necessary. Thus, the SURS' decision requiring recoupment was affirmed.

¶ 9 On October 11, 2002, Pharmcare requested the CEO set aside the Director's findings and conclusions and adopt the MAC's recommendations. The CEO declined and on January 9, 2003, the Director's decision was upheld. Pharmcare promptly appealed to district court. Based on the parties' briefs and arguments, the trial court affirmed the OHCA's decision demanding recoupment from Pharmcare. Pharmcare appeals.

### STANDARD OF REVIEW

■ ¶ 10 Once an administrative agency order is before us, the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.2001, 250 *et seq.* governs our review. Under the OAPA, the trial court and Court of Civil Appeals apply the same review standards to the administrative record. *State ex rel. Bd. of Trustees of Teachers' Retirement System v. Garrett*, 1993 OK CIV APP 29, 848 P.2d 1182; *Seely v. Oklahoma Horse Racing Comm'n*, 1987 OK CIV APP 61, 743 P.2d 685. Except in certain cases of alleged irregularities in procedure before the agency, the review is confined to the record made before the administrative tribunal. 75 O.S.2001, 321.

■ ¶ 11 Generally, an administrative decision should be affirmed if it is a valid order and the administrative proceedings are free from prejudicial error. 75 O.S.2001, 322 (3). An administrative order, however, is subject to reversal if an appealing party's substantial rights are prejudiced because the agency's decision is entered in excess of statutory authority or jurisdiction, or an order is entered based on an error of law. 75 O.S.2001, 322(1)(b) & (d). Reversal is also appropriate if the agency's findings are clearly erroneous in view of the reliable, material, probative, and substantial competent evidence in the record. 75 O.S.2001, 322(1)(e). As to factual questions, neither a trial court nor this Court is entitled to substitute its judgment for that of the agency as to the weight of the evidence. *Id.; Board of Examiners of Veterinary Med. v. Mohr*, 1971 OK 64, 485 P.2d 235.

### ANALYSIS

¶ 12 The Medical Assistance Program (hereinafter "Medicaid or Medicaid Act") is a cooperative program of the state and federal governments that provides medical assistance for the poor. *See* Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq.* Under the Medicaid program, the

---

4. The May 6, 2002, letter identified one (1) patient as deceased and three (3) patients as receiving personal care.

5. We note three (3) members of the MAC committee were absent and did not participate.

federal government shares with the states the cost of reimbursing participating agencies, physicians, and pharmacies for services rendered to eligible recipients. 42 U.S.C. §§ 1396a, 1396d. If a state elects to participate, the states' Medicaid program is primarily administered by the participating state, under a state plan, subject to federal guidelines and constraints. *See* 42 U.S.C. §§ 1396, 1396a. While a state is not obliged to participate in a Medicaid program, if it does participate, it must operate its program in compliance with federal statutes and regulations. *See* 42 U.S.C. § 1396a; *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). States do, however, have broad discretion to adopt standards for determining the extent of medical assistance, with the Act requiring only that the standards be reasonable and consistent with the objectives of the Medicaid Act. 42 U.S.C. § 1396a(a)(17). In Oklahoma, the OHCA is the state agency designated to operate the Medicaid program. *See* 63 O.S.2001 and Supp.2003, 5009.

a. Telephone Prescriptions

¶ 13 The trial court found, *inter alia,* that sterile water is a drug that requires a prescription which must be contained in a patient's clinical or medical file. On appeal, the parties agree sterile water is a drug which requires a prescription. The parties disagree, however, on whether Pharmcare produced proper prescriptions for sterile water and whether the prescriptions must be in the patient's clinical or medical file at the long-term care facility.

¶ 14 Pharmcare asserts it provided proper prescriptions for sterile water that were telephoned into the pharmacy and which the pharmacy promptly recorded in accordance with Oklahoma law. Pharmcare contends the issue of whether or not a corresponding prescription or record is contained in a patient's medical or clinical file should not have an adverse affect on its right to payment under Medicaid. Pharmcare maintains that as a pharmacy it should not be responsible for, nor should it be held liable for, a nursing

home or physician's failure to comply with OHCA's rules and regulations to maintain adequate clinical or medical records.

¶ 15 OHCA disagrees and contends there are a number of problems related to Pharmcare's provision of sterile water, including: 1) Pharmcare failed to produce prescriptions for numerous patients; 2) a number of the prescriptions that were produced merely stated "may" provide sterile water or were back-dated; and 3) the "telephone prescriptions."

¶ 16 With respect to the telephone prescriptions, OHCA asserts it properly investigated them because of the following circumstances: the unusually large number of prescriptions for sterile water filled by Pharmcare; the enormous markup in price;[6] the lack of specificity of the telephone prescriptions; and the fact that a majority of the patients did not receive all of their pharmaceutical needs through Pharmcare.

¶ 17 Under Oklahoma law, a prescription for a drug, such as sterile water, may be transmitted by word, telephone, or written communication to a pharmacist. *See* 59 O.S. 2001 and Supp.2002, 353.1(7). Section 353.1(7) provides:

> "Prescription" means and includes any order for drug or medical supplies written or signed, or transmitted by word of mouth, telephone or other means of communication by a licensed practitioner of allopathic or osteopathic medicine, including physician assistants under the supervision of a licensed physician, dentistry, optometry certified by the Board of Examiners in Optometry, podiatry, or veterinary medicine, licensed by law to prescribe such drugs and medical supplies intended to be filled, compounded, or dispensed by a pharmacist, or by a wholesaler or distributor as authorized in subsection G of Section 353.13 of this title; ...

If a prescription is received by the pharmacist by means other than written communication, then the prescription shall be promptly recorded in writing by the pharmacist. 59

---

6. Pharmcare received reimbursement from the OHCA pursuant to the AWP, which was set by the OHCA, rather than the EAC. The approved reimbursement rate set by OHCA for sterile water resulted in an unusually large profit margin for Pharmcare.

O.S.2001, 353.13A(A). The record made by the pharmacist constitutes the original prescription to be filled. *Id.*

¶ 18 In the present case, Pharmcare has produced prescriptions for patients, albeit not for all claims asserted, which were received via the telephone and which were promptly recorded in writing by the pharmacist. According to § 353.13A, these prescriptions are valid and lawful under Oklahoma law. Notwithstanding these prescriptions, the OHCA asserts the lack of a corresponding prescription in the patient's medical or clinical file renders the prescriptions invalid for Medicaid entitlement purposes. Thus, the OHCA is entitled to recoupment. We disagree. Although OAC 310:675–7–10.1 and 317:30–5–211(a)(4)(H)(iii) require prescriptions or a physician's record to be maintained in a patient's medical or clinical file, it is not a pharmacist's responsibility to ensure that a patient's file, maintained by either a physician or nursing home, is complete.

¶ 19 Our interpretation of "prescription" under § 353.13A(A) is mandated by the plain language of the statute. The Legislature has determined that a pharmacist is a proper person to receive a prescription and that the record made by the pharmacist constitutes the original prescription. Accordingly, the prescriptions received by Pharmcare are valid and lawful under Oklahoma law, regardless of whether a corresponding record is maintained in a patient's medical or clinical file.

¶ 20 Notwithstanding this determination, the record does provide that there are a number of instances where Pharmcare failed to provide prescriptions for patients or that prescriptions were provided for deceased patients. We note that Pharmcare has agreed to reimburse the OHCA for patients identified as deceased. Accordingly, to the extent Pharmcare has produced original prescriptions created pursuant to § 353.13A(A) for living patients, the prescriptions are valid and lawful.

b. Medical Necessity

¶ 21 Although Pharmcare has established that it produced valid, lawful prescriptions with regard to some of its disputed claims, the issue remains whether the sterile water supplied to patients was medically necessary. On appeal, the parties disagree on who determines what services, in this instance the provision of medication, qualify as medically necessary.

¶ 22 One of the express purposes of the Medicaid Act is to enable "each state, as far as practicable under the conditions in such state, to furnish medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of *necessary medical services* ...." 42 U.S.C. § 1396 (emphasis added).

¶ 23 The Medicaid Act requires participating states to provide qualified individuals with financial assistance in five (5) general categories of services: (1) inpatient hospital services; (2) outpatient hospital services; (3) laboratory and x-ray services; (4) skilled nursing facility services; and (5) physician services. 42 U.S.C. § 1396a(10)(A); *Beal v. Doe*, 432 U.S. 438, 440–441, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). However, nothing in the Medicaid Act requires states to provide funding for all medical treatment falling within the five general categories. *Beal*, 432 U.S. at 441, 97 S.Ct. 2366. The Act merely requires that a "State plan for medical assistance must ... include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ... are consistent with the objectives of [the Act]." *Id.* at 441, 97 S.Ct. 2366. "This language confers broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Id.* at 444, 97 S.Ct. 2366. States may also provide optional services, including the furnishing of prescriptions drugs. 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(12). Oklahoma has chosen to provide prescription drug coverage under its Medicaid program. *See* OAC § 317:35–5–72.[7]

---

**7.** The Medicaid Act's provisions for coverage of outpatient prescription drugs, also referred to as "Medicaid-eligible drugs," is set forth in 42 U.S.C. § 1396r–8.

¶ 24 In addition to granting states discretion in determining the extent of medical assistance, the Medicaid regulations grant states the authority to place appropriate limits on services on the basis of medical necessity or on utilization control procedures. 42 C.F.R. § 440.230(d).[8] As a result, Oklahoma has chosen to place such limits and procedures into affect under its program. Pursuant to OAC 317:30–3–1(d), "payment to practitioners on behalf of Medicaid eligible individuals is made only for services that are *medically necessary* and essential to the diagnosis and treatment of the patient's presentation problem." (Emphasis added) Notably, the Medicaid Act does not define what is medically necessary. This responsibility is left to the states. OAC § 317:30–3–1 grants the OHCA the authority to determine medical necessity. Notably, the OHCA shall serve as the final arbiter on issues of medical necessity.

f) Services provided within the scope of the Oklahoma Medicaid Program shall meet medical necessity criteria. Requests by medical services providers for services in and of itself shall not constitute medical necessity. The *Oklahoma Health Care Authority shall serve as the final authority pertaining to all determinations of medical necessity.* Medical necessity is established through consideration of the following standards:

1) Services must be medical in nature and must be consistent with accepted health care practice standards and guidelines for the prevention, diagnosis or treatment of symptoms of illness, disease or disability;

2) Documentation submitted in order to request services or substantiate previously provided services must demonstrate through adequate objective medical records, evidence sufficient to justify the client's need for the service;

3) Treatment of the client's condition, disease or injury must be based on reasonable and predictable health outcomes;

4) Services must be necessary to alleviate a medical condition and must be required for reasons other than convenience for the client, family, or medical provider;

5) Services must be delivered in the most cost-effective manner and most appropriate setting; and

6) Services must be appropriate for the client's age and health status and developed for the client to achieve, maintain or promote functional capacity. (Emphasis added)

¶ 25 Finally, the OHCA has the authority to conduct prospective and retrospective review of pharmacy claims to insure prescriptions are appropriate, medically necessary, and not likely to result in adverse medical results. *See* OAC § 317:30–5–86.

¶ 26 Given our foregoing discussion, we cannot agree with Pharmcare's assertion that the physician should be the sole arbiter of medical necessity.[9] Not only would such a rule result in inconsistency, with unfair applications based on the variation between physicians, but the state's requirement of reimbursement would be limited only by the imagination of physicians. Such open-ended liability was not the intent of the Medicaid Act. However, a physician's determination that services are necessary for a patient's condition, disease, or injury is a consideration the OHCA uses in rendering its determination of whether the service is medically necessary. Accordingly, in the present case, in conformance with the Medicaid Act and under the authority of OAC § 317:30–3–1, the OHCA is the final arbiter of whether the

---

8. Title 42 C.F.R. § 440.230 provides:
   a) The plan must specify the amount, duration, and scope of each service that it provides for—
     (1) The categorically needy; and
     (2) Each covered group of medically needy.
   (b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.
   (c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.
   (d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures.

9. Pharmcare asserts the physician is the sole arbiter of what constitutes a medical necessity, citing *Visser v. Taylor,* 756 F.Supp. 501 (D.C.K.S. 1990).

prescription at issue, sterile water, was medically necessary.

¶ 27 Pharmcare asserts, however, that regardless of who is the arbiter of medical necessity, it should not be held as a guarantor of this decision. Pharmcare asserts the issue of medical necessity applies only to physicians and other appropriate individuals who order services for patients, not to those who act pursuant to those orders.

¶ 28 Pharmcare is governed by the Oklahoma Pharmacy Act, 59 O.S.2001 and Supp. 2002, 353.1 *et seq.* and the rules promulgated by the Oklahoma Board of Pharmacy, OAC 317:30–5–70.1. The Pharmacy Act provides the scope of a pharmacist's practice. The "practice of pharmacy" includes the following:

a. the interpretation and evaluation of prescription orders,

b. the compounding, dispensing, administering and labeling of drugs and devices, except labeling by a manufacturer, packer or distributor of nonprescription drugs and commercially packaged legend drugs and devices,

c. the participation in drug selection and drug utilization reviews,

d. the proper and safe storage of drugs and devices and the maintenance of proper records thereof,

e. the responsibility for advising by counseling and providing information, where professionally necessary or where regulated, of therapeutic values, content, hazards and use of drugs and devices,

f. the offering or performing of those acts, services, operations, or transactions necessary in the conduct, operation, management and control of a pharmacy, and

g. the provision of those acts or services that are necessary to provide pharmaceutical care; ...

A pharmacist may refuse to fill and dispense a prescription which appears to be improperly executed or which, in his professional judgment, is unsafe as presented. OAC 317:30–5–70.1. We note 59 O.S.2001, 353.13A(A) authorizes telephone prescriptions and that the OHCA has not asserted the prescriptions at issue were unsafe as presented.

¶ 29 Based on the scope of a pharmacist's practice, it is clear the responsibility of prescribing medication to a patient does not lie with a pharmacist. Rather, the determination of whether a particular medication is medically necessary for a patient lies with the treating physician or other appropriate individual.

¶ 30 A pharmacist's duty to that same patient is clearly defined and limited under the Pharmacy Act. These duties include accurately filling and dispensing prescriptions, advising by counseling or providing other information, or the provision of other services that are necessary to providing pharmaceutical care. Although a pharmacist does have a duty under the Pharmacy Act to interpret and evaluate prescription orders, this does not equate with a physician's duty of determining the medical necessity of a particular service or medication. This is a determination to be made by the patient's treating physician in the first instance. In addition, we believe the prescription drug at issue, sterile water, does not present a situation that would cause a pharmacist to independently inquire as to the necessity of the prescription.

¶ 31 While OHCA clearly has the authority to determine that sterile water is not medically necessary, it had not done so prior to Pharmcare's receipt of the valid and lawful telephone prescriptions at issue in this case. Accordingly, since Pharmcare merely filled valid, lawful prescriptions received as a matter of course, the OHCA may not retroactively seek recoupment from the pharmacy. If any party is to be responsible to repay the OHCA for inappropriate, medically unnecessary charges, it should be the party to whom is charged the duty to make the initial determination of medical necessity. If OHCA reserves the right to evaluate medical necessity retrospectively, it is only fair it directs its efforts against the party whose initial determination of medical necessity it disagrees with, not the party whose duty was to accurately fill and dispense prescriptions which it believed were authorized. This court in reviewing statutory construction uses a de novo standard. *State ex rel. Oklahoma Tax*

*Comm'n v. Texaco Exploration & Prod., Inc.,* 2005 OK 52, ¶ 7, 131 P.3d 705, 707–08. Accordingly, we hold as a matter of law that the OHCA has no theory of recovery against Pharmcare for recoupment on the basis of the facts presented other than as previously discussed.

c. Conflict of Interest

¶ 32 In its third proposition of error, Pharmcare asserts a conflict of interest existed that prejudiced the proceedings below. Pharmcare asserts that Jana Webb (Webb), a manager for SURS, should have been removed from the investigation. The record provides that Webb was actively involved in the investigation of Pharmcare. At the time of the investigation, Webb's sister was employed as a marketing director for a competitor of Pharmcare. Although Pharmcare raised the conflict, OHCA refused to assign a new investigator.

¶ 33 Pharmcare asserts pursuant to 51 O.S. 2001, 302, Webb should have been removed and replaced with a different investigator. Section 302 provides:

1. That the operation of government be properly conducted so that public officials are independent and impartial and that a public office is not used for private gain other than the remuneration provided by law. Public interest, therefore, requires that the law protect against any conflict of interest and establish standards for the conduct of elected officials and government employees in situations where conflicts may exist;

¶ 34 While we agree it would have been prudent for the OHCA to have assigned a new investigator to remove even the appearance of partiality or prejudice, the trial court's order affirming the OHCA's decision finding no conflict is not clearly erroneous in view of the reliable, material, probative and substantial competent evidence in the record.

d. Due Process

¶ 35 In its final proposition of error, Pharmcare asserts the medical director's findings, which where upheld by the OHCA and the trial court, violated its due process rights. More specifically, Pharmcare asserts OHCA failed to prove Pharmcare received payment to which it was not entitled. We decline to reach this issue, recognizing the general rule that where legal relief is available on alternative, non-constitutional grounds, we avoid reaching a determination on the constitutional basis. *Board of Cty. Comm'n of Muskogee Cty. v. Lowery,* 2006 OK 31, ¶ 14, 136 P.3d 639, 649 (citing *State ex rel. Fent v. State ex rel. Okla. Water Bd.,* 2003 OK 29, ¶ 12, 66 P.3d 432, 439).

CONCLUSION

¶ 36 Accordingly, to the extent Pharmcare has produced original prescriptions created pursuant to 59 O.S.2001, 353.13A(A), it has valid, lawful prescriptions and is entitled to retain its remuneration under Medicaid. For those claims Pharmcare did not produce prescriptions, and no prescriptions or order was identified in the patients' medical or clinical file or for deceased patients, the OHCA is entitled to recoupment. The matter is remanded to the trial court for a hearing to determine the correct amount the OHCA is entitled to recoup. The trial court's order affirming the OHCA's decision finding no conflict of interest is affirmed.

¶ 37 AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

WISEMAN, P.J., and FISCHER, J., concur.