228 P.3d 1199 (2009)
2009 OK CIV APP 107
John and Vernice DAILY, Plaintiff/Appellees,
v.
STATE of Oklahoma ex rel., OKLAHOMA DEPARTMENT OF HUMAN SERVICES; Howard Hendrick, Director of Oklahoma Department of Human Services; Oklahoma Health Care Authority; Mike Fogarty, Director of Oklahoma Health Care Authority; and Howard Hendrick, Individually, Defendant/Appellants.
No. 106,968. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
Court of Civil Appeals of Oklahoma, Division No. 3.
September 4, 2009.
Certiorari Denied December 14, 2009.
*1200 Craig Riffel, Dalen D. McVay, Mitchel, Gaston, Riffel & Riffel, Enid, OK, for Plaintiff/Appellees.
Lynn S. Rambo Jones, Oklahoma City, OK, for Defendant/Appellants, Oklahoma Health Care Authority.
Travis Smith, Oklahoma City, OK, for Defendants/Appellants, Oklahoma Department of Human Services.
CAROL M. HANSEN, Presiding Judge.
¶ 1 Defendant/Appellants, State of Oklahoma ex rel. Oklahoma Department of Human Services (DHS), Howard Hendrick, director of DHS, Oklahoma Health Care Authority (OHCA), and Mike Fogarty, director of OHCA (collectively State), seek review of the district court's order granting summary judgment in favor of Plaintiff/Appellees, John Daily (Husband) and Vernice Daily (Wife) (collectively Applicants), in their action for judicial review of DHS's decision denying Husband's application for Medicaid benefits based upon Husband's transfer of his assets to a trust payable to Wife. We hold the corpus of the trust, to the extent it is payable to Wife, is a resource available to Husband. To the extent any portion of the corpus is not payable to Wife, it is a disposed asset that subjects Husband to a transfer penalty. We reverse the district court's order, leaving DHS's decision in effect.
¶ 2 Husband entered a nursing home in Kansas on November 28, 2006 and transferred *1201 to an Oklahoma nursing home on January 30, 2007. Wife continued to live at home. At the time Husband first entered a nursing home, Applicants owned countable resources totaling $121,740.00, of which half, or $60,870.00, was allocated to each spouse. In February 2008, Wife created an irrevocable trust. Husband funded the trust with $51,000.00 and spent down his remaining resources to $2,000.00 by paying for living expenses and his nursing home care.
¶ 3 The trust agreement stated the purpose of the trust was "to enable [Husband] to qualify for Medicaid assistance." It stated Wife was "the sole beneficiary of this trust" and provided the trustee would pay to Wife "all of the net income and principal of the trust in 48 monthly installments," beginning March 5, 2007. The trust agreement provided that if Wife died before the term of the trust expired, the remaining trust property would be paid as provided in her will or to her living descendants per stirpes.
¶ 4 Husband then applied to DHS for Medicaid benefits. DHS denied the application based upon Husband's possession of resources in excess of the $2,000.00 Medicaid resource limit. Husband sought an administrative hearing. After a hearing, the DHS hearing officer found Husband was ineligible for Medicaid based upon 42 U.S.C. § 1396p(c)(1),[1] because he had transferred assets for the purpose of qualifying for Medicaid and did not receive fair market value for the assets.
¶ 5 Applicants appealed the hearing officer's decision to Hendrick, the director of DHS. Hendrick concluded:
Mrs. Daily was entitled to receive half of the $121,739.23 the couple had when Mr. Daily entered the nursing home on November 28, 2006. Mrs. Daily kept her half, $60,896.50. Mr. Daily put $51,000 in the Trust, which solely benefitted Mrs. Daily-leaving Mrs. Daily with $111,896.50. Since she was only entitled to have $60,896.50, the extra $51,000 must be attributed to Mr. Daily. Since Mr. Daily has not shown that $49,000 has been spent for his benefit to bring his resources down to the $2,000 Medicaid cap, OKDHS acted correctly in denying his application.
¶ 6 Pursuant to 75 O.S.2001 § 322, Applicants sought judicial review of the agency's final decision in the district court of Dewey County. They moved for summary judgment, first arguing DHS is barred by issue preclusion from denying Husband benefits. They asserted DHS's final administrative decision in In re: Arvel Hayes, Case No. M731902, Hearing No. H49751 (2006), holding the wife's trust was not an available resource in determining the husband's Medicaid *1202 eligibility, precluded DHS from determining Wife's trust in the present case is an available resource. They also argued the trust corpus was not an available resource under 42 U.S.C. § 1396p(d)(3)(B)(I)[2] and OAC 317:35-5-41.6(5)(C)(ii)[3] because Wife's trust was irrevocable, she was the sole beneficiary, and Husband was never entitled to receive any property from the trust. They argued, therefore, there were no circumstances under which payments could be made to the trust to Husband or for his benefit.
¶ 7 In response, State argued 42 U.S.C. § 1396r-5(c)(2)[4] required it to attribute the $51,000.00 in the trust to Husband. Any resources belonging to the couple in excess of Wife's allocation of $60,870.00 must be attributed to Husband and counts against the $2,000.00 resource limit. State argued in the alternative that funding the trust was a disqualifying transfer which would subject Applicants to a penalty period before they could be eligible for Medicaid. In addition, State argued issue preclusion was inapplicable because this case did not involve the same parties as the Hayes case.
¶ 8 After oral argument, the district court granted summary judgment in favor of Applicants, finding the trust was unavailable for Medicaid purposes. State appeals without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla.Sup.Ct.R. 1.36, 12 O.S.Supp.2003, Ch. 15, App. 1. However, State moved for an order to treat this matter as an ordinary appeal from a final order of the district court rather than a Rule 1.36 accelerated procedure. The Oklahoma Supreme Court denied the motion without prejudice to the reviewing court permitting briefs to be filed. We decline to permit further briefing.
¶ 9 Medicaid is a cooperative program of the state and federal governments to provide medical assistance for the poor. A state is not obliged to participate in a Medicaid *1203 program, but if it does participate, it must operate its program in compliance with federal statutes and regulations. Pharmcare Oklahoma, Inc. v. State Health Care Authority, 2007 OK CIV APP 5, 152 P.3d 267, 269-270. OHCA is the designated state agency for the administration of the Oklahoma Medicaid Program. It contracts with DHS for the determination of Medicaid eligibility and other administrative or operational functions related to the Oklahoma Medicaid Program. 63 O.S.Supp.2004 § 5009(B)(1).
¶ 10 DHS's determination as to Medicaid eligibility is subject to judicial review pursuant to the Oklahoma Administrative Procedures Act, 75 O.S.2001 § 318 et seq. The material facts in the present case are undisputed; therefore we will review the agency decision and district court order only for error of law pursuant to 75 O.S.2001 § 322(1)(d).
¶ 11 In Wisconsin Dep't of Health & Family Servs. v. Blumer, 534 U.S. 473, 479, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002), the U.S. Supreme Court acknowledged, "Because spouses typically possess assets and income jointly and bear financial responsibility for each other, Medicaid eligibility determinations for married applicants have resisted simple solutions." In 1988, Congress enacted a complex set of instructions in 42 U.S.C. § 1396r-5 to permit a spouse living at home, called the "community spouse," to reserve certain income and assets to meet the minimum monthly maintenance needs the community spouse will have when the other spouse, the "institutionalized spouse," is institutionalized in a nursing home and becomes eligible for Medicaid. Id.
¶ 12 The portion of the couple's assets reserved to the community spouse is called the "community spouse resource allowance" (CRSA), and consists of one-half the value of the nonexempt assets, subject to a minimum and maximum. § 1396r-5(f)(2)(A). The CRSA is computed as of the beginning of institutionalization. § 1396r-5(c)(1).
¶ 13 At the time of the applicant's initial eligibility determination, all resources held by either spouse are considered available to the institutionalized spouse. § 1396r-5(c)(2)(A). An applicant's countable resources are the total nonexempt resources less the CRSA. OAC 317:35-19-21(3)(B)(vi). The institutionalized spouse is not eligible for Medicaid unless the countable resources do not exceed the maximum resource standard as determined by DHS. OAC 317:35-19-21(3)(B)(vii). Excess resources must be spent down to the maximum resource standard before the institutionalized spouse is eligible for Medicaid.
¶ 14 Congress has addressed the treatment of trusts for Medicaid eligibility purposes. An individual is considered to have established a trust if either the individual or the individual's spouse established the trust other than by will. 42 U.S.C. § 1396p(d)(2)(A)(i) and (ii). If the trust is an irrevocable trust and there are any circumstances under which payment from the trust may be made to or for the benefit of the individual, the portion of the corpus from which that payment may be made is considered resources available to the individual. § 1396p(d)(3)(B)(i). Any portion of the corpus from which no payment could be made to the individual must be considered assets disposed by the individual. § 1396p(d)(3)(B)(ii).
¶ 15 Disposing of assets renders an individual ineligible for Medicaid for a period of time equivalent to the amount of nursing home care those assets would have purchased. § 1396p(c)(1)(A) and (E)(i). However, an individual is not ineligible for Medicaid "to the extent that ... the assets ... were transferred to the individual's spouse or to another for the sole benefit of the individual's spouse." § 1396p(c)(2)(B)(i). A transfer of assets to a spouse does not render an individual subject to the transfer penalty because pursuant to § 1396r-5(c)(2)(A) those assets remain available to the transferring individual.
¶ 16 In the case of assets transferred to a trust, the assets remain available to the transferring individual to the extent they may be paid to the spouse, because payments to the spouse benefit the transferring individual. For example, in Johnson v. Guhl, 357 F.3d 403, 409 (3d Cir.2004), the Court held an annuity trust, designed to provide a lifetime stream of annuity payments to the community *1204 spouse, was a countable asset because the payments could be used for the benefit of the institutionalized spouse. This is particularly true in Oklahoma, where one spouse has the duty of supporting the other spouse. 43 O.S.2001 § 202. To the extent assets transferred to a trust are not payable to the spouse, they must be treated as assets disposed by the transferring individual.
¶ 17 In the present case, Husband transferred his assets to a trust for the purpose of qualifying for Medicaid. The entire corpus of the trust is payable to Wife over the course of four years; therefore, it is considered a resource available to Husband. To the extent any portion of the corpus is not payable to Wife and to the benefit of Husband, it must be treated as a disposed asset that subjects Husband to a transfer penalty. Accordingly, we hold DHS properly decided Husband was ineligible for Medicaid.
¶ 18 The agency's decision is not precluded by its hearing officer's contrary decision in another applicant's case.
¶ 19 The district court erred in reversing DHS's decision. Its order granting summary judgment in favor of Applicants is REVERSED, and DHS's decision remains in effect.
MITCHELL, C.J., and JOPLIN, J., concur.
NOTES
[1] 42 U.S.C. § 1396p provides in part,

(c) Taking into account certain transfers of assets
(1)(A) In order to meet the requirements of this subsection for purposes of section 1396a(a)(18) of this title, the State plan must provide that if an institutionalized individual or the spouse of such an individual (or, at the option of a State, a noninstitutionalized individual or the spouse of such an individual) disposes of assets for less than fair market value on or after the look-back date specified in subparagraph (B)(i), the individual is ineligible for medical assistance for services described in subparagraph (C)(i) (or, in the case of a noninstitutionalized individual, for the services described in subparagraph (C)(ii)) during the period beginning on the date specified in subparagraph (D) and equal to the number of months specified in subparagraph (E). (B)(i) The look-back date specified in this subparagraph is a date that is 36 months (or, in the case of payments from a trust or portions of a trust that are treated as assets disposed of by the individual pursuant to paragraph (3)(A)(iii) or (3)(B)(ii) of subsection (d) of this section or in the case of any other disposal of assets made on or after February 8, 2006, 60 months) before the date specified in clause (ii). (ii) The date specified in this clause, with respect to
(I) an institutionalized individual is the first date as of which the individual both is an institutionalized individual and has applied for medical assistance under the State plan, ......
(E)(i) With respect to an institutionalized individual, the number of months of ineligibility under this subparagraph for an individual shall be equal to
(I) the total, cumulative uncompensated value of all assets transferred by the individual (or individual's spouse) on or after the look-back date specified in subparagraph (B)(i), divided by
(II) the average monthly cost to a private patient of nursing facility services in the State (or, at the option of the State, in the community in which the individual is institutionalized) at the time of application....
[2] 42 U.S.C. § 1396p(d)(3)(B) provides,

(B) In the case of an irrevocable trust
(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income
(I) to or for the benefit of the individual, shall be considered income of the individual, and
(II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c) of this section; and
(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) of this section, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.
[3] OAC 317:35-5-41.6(5)(C)(ii) provides,

In the case of an irrevocable trust, if there are any circumstances under which payments from the trust could be made to or for the benefit of the individual, the portion of the principal of the trust, or the income on the principal, from which payment to the individual could be made is considered available resources. Payments from the principal or income of the trust is considered income of the individual. Payments for any other purpose are considered a transfer of assets by the individual and are subject to the 60 months look back period. Any portion of the trust from which, or any income on the principal from which no payment could under any circumstances be made to the individual is considered as of the date of establishment of the trust (or if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of the asset transfer rules and are subject to the 60 months look back period.
[4] 42 U.S.C. § 1396r-5(c)(2) provides,

Attribution of resources at time of initial eligibility determination
In determining the resources of an institutionalized spouse at the time of application for benefits under this subchapter, regardless of any State laws relating to community property or the division of marital property
(A) except as provided in subparagraph (B), all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse, and
(B) resources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds the amount computed under subsection (f)(2)(A) of this section (as of the time of application for benefits).
The provisions of this section are implemented in Oklahoma by OAC 317:35-19-21.