2016 OK CIV APP 66

**DIANE CARISTA, as surviving sister and next of kin, and on behalf of herself and all other heirs-at-law to Barton Ray Carista, decedent, Plaintiff/Appellant,**

v.

**WILLIAM M. VALUCK, D.O.; MICHAEL E. HUME, P.A.; DOROTHY JUNE HUME; PATRICK REYNOLDS; GOOD TO GO, LLC, dba VISTA MEDICAL CENTER and ADVANCED CARE CLINIC, LLC, Defendants,**

and

**WESTMINSTER FAMILY DRUG, Defendant/Appellee.**

Case No. 114,732

THIS OPINION HAS BEEN RELEASED FOR PUBLICATION BY ORDER OF THE COURT OF CIVIL APPEALS, Division No. 2

Court of Civil Appeals of Oklahoma, Division No. 2.

FILED SEPTEMBER 19, 2016

Mandate Issued: 10/20/2016

David W. Van Meter, M. Kevin Walker, Ellen Martin Watts, VAN METER LAW FIRM, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Amy S. Neathery, PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P., Oklahoma City, Oklahoma, for Defendant Dorothy Hume and Advanced Care Clinic, L.L.C.

Malinda S. Matlock, Hailey M. Hopper, PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P., Oklahoma City, Oklahoma, for Defendant/Appellee Westminster Family Drug.

OPINION BY P. THOMAS THORNBRUGH, PRESIDING JUDGE:

¶1 Diane Carista appeals the dismissal, with prejudice, of her wrongful death suit against Westminster Family Drug (Pharmacy). On review, we find that dismissal was appropriate as to Carista's existing petition, but that it is possible for Carista to amend her petition to state a recognized duty by Pharmacy. We vacate the lower court's dismissal with prejudice, and remand with instructions that Carista be given a reasonable period to file an amended petition pursuant to 12 O.S.2011 § 2012(G).

**BACKGROUND**

¶2 This suit arises from the death of Barton Ray Carista (Decedent) from a purported overdose of painkillers prescribed by a physician.[1] Plaintiff, Diane Carista (Carista), Decedent's sister, sued several parties, including Pharmacy, seeking damages for alleged wrongful death. Carista alleged in her petition that a "health care provider-patient relationship" existed between Decedent and Pharmacy, and that Pharmacy had acted as follows:

1. Failed to "appreciate proper prescription filling procedures for dangerous medications ... by not reviewing a Patient Prescription History Report and/or contacting the prescribing physician";

2. Failed to provide "appropriate care including follow-up care, in failing to properly monitor and assess [Decedent's] medications";

3. Failed "to inform [Decedent] of the lethal consequences of certain combinations of dangerous narcotics";

4. Failed "to control employees";

5. Failed to "supervise the people practicing pharmacology in their pharmacies;"

6. Failed to "properly investigate and credential the people practicing pharmacology in their pharmacies";

7. Failed to "have employees acknowledge and consider the effects of the drugs on [Decedent's] diagnosed hypertension"; and

8. Failed to "acknowledge and consider [Decedent] a high risk for drug abuse and addiction with his history of methamphetamine and marijuana abuse," and "protect the health and safety of [Dece-

1. The record is not currently developed, and the court has not yet made a finding regarding the cause of Decedent's death.

dent], thus falling below the accepted medical standards of care."

Pharmacy moved to dismiss pursuant to 12 O.S.2011 § 2012(B)(6), alleging that it had no statutory or common law duty to act as alleged by Carista. The district court dismissed Pharmacy as a defendant. Carista now appeals.

## STANDARD OF REVIEW

¶ 3 The standard of review for an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is *de novo*. *Tuffy's, Inc. v. City of Okla. City*, 2009 OK 4, ¶ 6, 212 P.3d 1158. When reviewing a motion to dismiss, the Court must view the facts as true and favorably to the plaintiff. *Id.* The purpose of a motion to dismiss is to determine the legal sufficiency of the claim, not the underlying facts. *Id.* "A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle the plaintiff to relief." *Id.*

■ ¶ 4 The dismissal in this case was made on the grounds that no duty existed pursuant to the facts pled. The threshold question in any action for negligence is the existence of a duty. *Wood v. Mercedes–Benz of Okla. City*, 2014 OK 68, ¶ 7, 336 P.3d 457; *Miller v. David Grace, Inc.*, 2009 OK 49, ¶ 11, 212 P.3d 1223; *Bray v. St. John Health Sys., Inc.*, 2008 OK 51, ¶ 6, 187 P.3d 721. The existence of a legal duty is a question of law for the court. *Id.* If a defendant does not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law. *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959; *First Nat'l Bank in Durant v. Honey Creek Entertainment Corp.*, 2002 OK 11, ¶ 20, 54 P.3d 100. Carista's petition alleges that pharmacists filling

prescriptions in Oklahoma have a broad range of duties not currently established by the state's courts. As such, this case presents a matter of first impression.

## ANALYSIS

### I. THE LEARNED INTERMEDIARY DOCTRINE

■ ¶ 5 Pharmacy's motion to dismiss relied primarily on the "learned intermediary" doctrine. The Oklahoma Supreme Court first noted this doctrine in *McKee v. Moore*, 1982 OK 71, 648 P.2d 21, wherein it held that, in the absence of any directive that a warning be given directly to the patient, it is the duty of a drug manufacturer to inform a physician of known hazards, side effects, and interactions of prescription drugs, and the duty of the physician, not the manufacturer, to relay this information to the patient. Pharmacy argued that this principle places sole responsibility with the physician to communicate any matter covered by the learned intermediary doctrine, and not with a pharmacist

■ ¶ 6 No published Oklahoma case has applied this doctrine in a case involving a pharmacist. Many other states appear, however, to have adopted the doctrine, with limited exceptions, to shield pharmacists from being required to "second guess" a physician's medical decisions embodied in an otherwise authorized and legally made prescription. These exceptions are generally:

1. If the prescription is "unreasonable on its face," e.g., it prescribes facially bizarre quantities or dosages clearly outside of any acceptable range, or clearly inappropriate drugs; and

2. If the prescribed drug is clearly contraindicated, and the pharmacist has sufficient knowledge of the patient's condition and history to know this.[2]

---

2. A collection of cases addressing the approach of various jurisdictions can be found in *Gallegos v. Wood*, CIV 13–1055 JB/KBM, 2016 WL 1426554, at *26 and *27 (D.N.M. Mar. 31, 2016). *See also Dee v. Wal–Mart Stores, Inc.*, 878 So.2d 426, 427 (Fla. Ct. App. 2004)(pharmacy must use due and proper care in filling a prescription, and when a pharmacy fills a prescription which is unreasonable on its face, even though it is lawful as written, it may breach this

duty of care); *Riff v. Morgan Pharmacy*, 353 Pa.Super. 21, 508 A.2d 1247, 1252 (1986) ("Morgan Pharmacy breached that duty by failing to warn the patient or notify the prescribing physician of the obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to the plaintiff."); *Moore ex rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So.2d 658, 665 (Miss. 2002) ("An exception to the learned intermediary doctrine, as applied

¶ 7 These conditions appear to conform to the various Oklahoma cases that attempt to define the duties of a pharmacist. The most comprehensive Oklahoma appellate court statement regarding these duties is found in *Pharmcare Oklahoma, Inc. v. State Health Care Auth.*, 2007 OK CIV APP 5, ¶¶ 29–30, 152 P.3d 267:

> Based on the scope of a pharmacist's practice, it is clear the responsibility of prescribing medication to a patient does not lie with a pharmacist. Rather, the determination of whether a particular medication is medically necessary for a patient lies with the treating physician or other appropriate individual.
>
> A pharmacist's duty to that same patient is clearly defined and limited under the Pharmacy Act. These duties include accurately filling and dispensing prescriptions, advising by counseling or providing other information, or the provision of other services that are necessary to providing pharmaceutical care. Although a pharmacist does have a duty under the Pharmacy Act to interpret and evaluate prescription orders, this does not equate with a physician's duty of determining the medical necessity of a particular service or medication. This is a determination to be made by the patient's treating physician in the first instance. . . .

This existing case law does not support Carista's expanded view of the duties of a pharmacist. Carista relies, however, on the Okla-

homa Pharmacy Act, 59 O.S.2011 & Supp. 2015 §§ 353 through 366 (Pharmacy Act), the Oklahoma Administrative Code (OAC), and U.S. Drug Enforcement Administration (USDEA) regulations as a source of the duties she claims.

## A. Federal Drug Enforcement Administration Regulations

¶ 8 Carista cites section 523:10–3–1.2 of the "Pharmacists Manual" issued by the USDEA as authority for a tort duty in this case. We find no reported case in *any jurisdiction of the United States* utilizing or examining this USDEA publication as a source of law, guidance, or persuasive authority in a tort case, or in any other case. We further have no copy of this document in the appellate record. We decline to take the unprecedented step of declaring that a federal publication of unknown content establishes a tort not previously recognized by our Supreme Court.

## B. The Pharmacy Act

¶ 9 Carista relies on the "Definitions" section (§ 353.1) of the Pharmacy Act as creating a tort duty in this case. Subsection 37 of § 353.1 defines "practice of pharmacy" as follows:

> a. the interpretation and evaluation of prescription orders,
>
> b. the compounding, dispensing, administering and labeling of drugs and devices,

to pharmacists, exists where it was undisputed that a plaintiff had informed the pharmacy of health problems which contraindicated the use of the drug in question."); *Walls v. Alpharma USPD, Inc.*, 887 So.2d 881 (Ala. 2004) (The learned-intermediary doctrine foreclosed any duty upon a pharmacist filling a physician's prescription, valid and regular on its face, to warn the physician's patient, the pharmacist's customer, or any other ultimate consumer of the risks or potential side effects of the prescribed medication except insofar as the prescription ordered, or an applicable statute or regulation expressly required, that an instruction or warning be included on the label of the dispensed medication or be otherwise delivered); *Deed v. Walgreen Co.*, 50 Conn.Supp. 339, 927 A.2d 1001 (2007) (Customer, who died of acute toxicity related to prescription medications that customer had gotten from pharmacy, knew all the drugs she was taking, from whom she had obtained them, and how frequently and for what purpose; thus, the pharmacy had

no knowledge superior to customer's, and pharmacy had no duty to warn customer and no liability for the tragic consequences of customer's ingesting those drugs); *Nichols v. Central Merchandise, Inc.*, 16 Kan.App.2d 65, 817 P.2d 1131 (1991) (Under learned intermediary doctrine adopted by Kansas courts, pharmacy and its pharmacist owed no duty to warn customer of potential side effects of drug prescribed by pregnant patient's treating physician); *Adkins v. Mong*, 168 Mich.App. 726, 425 N.W.2d 151 (1988) (A pharmacist owes no duty to warn customer of potential side effects of substance dispensed in accordance with valid prescription or to monitor and intervene with customer's use of medication prescribed by licensed treating physician); *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 469 (Tex. Ct. App. 2000) (Pharmacists are not generally legally obligated to warn patients of potential adverse reactions or dangerous side effects.).

except labeling by a manufacturer, repackager or distributor of nonprescription drugs and commercially packaged legend drugs and devices,

c. the participation in drug selection and drug utilization reviews,

d. the proper and safe storage of drugs and devices and the maintenance of proper records thereof,

e. the responsibility for advising by counseling and providing information, where professionally necessary or where regulated, of therapeutic values, content, hazards and use of drugs and devices,

f. the offering or performing of those acts, services, operations or transactions necessary in the conduct, operation, management and control of a pharmacy, or

g. the provision of those acts or services that are necessary to provide pharmaceutical care.

¶ 10 Carista argues that two of these definitions, 37(a) ("the interpretation and evaluation of prescription orders,") and 37(e) ("the responsibility for advising by counseling and providing information, where professionally necessary or where regulated, of therapeutic values, content, hazards and use of drugs and devices"), define the duty of a pharmacist in a tort context. Viewing the "Definitions" section in context, we find it clear that it is intended to *define activities that are subject to regulation by the Board of Pharmacy* pursuant to 59 O.S § 353.7.[3] We find no authority for the proposition that these definitions create statutory duties in a tort context.

C. The Oklahoma Administrative Code

¶ 11 Carista next relies on OAC § 317:30–5 as defining "the statutory duties of pharmacists." Section 317:30–5 is, however, part of the OAC Title 317 regulations concerning the Oklahoma Healthcare Authority as that authority relates to Fee–for–Service Medical Providers, including physicians; physician assistants: hospitals; long term care hospitals; pharmacies; certified laboratories; long term care facilities; bariatric surgery; medical suppliers; genetic counselors; certified nurse midwives and lactation consultants; and numerous other professions. The scope of this regulation clearly defines the various legal relationships between numerous fee-for-service providers and the Oklahoma Healthcare Authority/Soonercare program. Section 317:30–5–70.1 is clear that pharmacists are governed by the rules of professional conduct as promulgated by the Oklahoma Board of Pharmacy (or the state's rules of professional conduct where the pharmacy is licensed) pursuant to 59 O.S. § 353.7(12), and not by this section of the OAC We find no indication that the Title 317, Chapter 30, regulations were intended to generally **regulate the practice of numerous professions** or define statutory duties outside of the fiscal and administrative relationship of a provider with the state healthcare authority.[4] Any "statutory duty," if it exists, must therefore be found in Title 535 of the regulations, rather than Title 317.

¶ 12 Carista finally cites OAC § 535:10–3–1.2(10) as making it a violation of professional conduct for a pharmacist not to "attempt[ ] to address the possible addiction or dependency of a patient to a drug dispensed by the pharmacist, if there is reason to believe that the patient may be dependent or addicted." Carista's petition contains no allegation that the Decedent was addicted to the drug **dispensed by the pharmacist,** or any facts indicating that Pharmacy **had any reason to believe** that he was addicted to the drug **dispensed by the pharmacist.** Rather, the petition alleges that Pharmacy had a duty to consider Decedent's "history of methamphetamine and marijuana abuse," and his consequent "high risk for abuse and addiction."

¶ 13 This argument wanders too far afield from the regulatory text. The regulation

3. Stating: "The State Board of Pharmacy shall have the power and duty to: 1. Regulate the practice of pharmacy"

4. By example, § 317:30–5–77.1 limits the quantity of medications that a pharmacist may dispense to a 34–day supply unless the state Drug Utilization Review Board allows a greater quantity or in certain other cases. This regulation clearly does not legally limit pharmacists from dispensing more than a 34–day supply of a drug. It applies only in the context of prescriptions paid for by a state program, and is clearly a fiscal measure, not a patient care directive.

deals with a patient's possible addiction or dependency to a drug *dispensed by the pharmacist*, not with a risk for abuse indicated by the use of dangerous controlled substances such as methamphetamine or marijuana. We find no indication that the Board of Pharmacy intended to create a duty for pharmacists to question clients regarding illegal drug use, or to second-guess the judgment of a doctor in prescribing drugs to persons who may also abuse illegal substances. Pharmacists are neither physicians nor counselors on the use of illegal drugs. They are statutorily prohibited from any attempt at diagnosis or treatment that might infringe upon the legally constituted right or obligation of any practitioner of the healing arts. To place the responsibility on a pharmacist to act as a virtual "second medical opinion" when filling an otherwise facially valid prescription would radically change the accepted duties of a pharmacist.

### D. Conclusion to this Section

¶ 14 Carista proposes a broad expansion to the duties of pharmacists that we find unsupported by existing Oklahoma state law or regulations, and outside the mainstream of other states' laws. The duties urged by Carista would result in pharmacists acting as a form of second medical opinion, and certainly could enmesh pharmacists in the practice of medicine.[5] We find that the duty of Pharmacy in this matter is limited by the principles and exceptions to the learned intermediary doctrine outlined in this opinion.

### II. THE COURT'S DISMISSAL

### A. The Submission of Evidence in a Dismissal Proceeding

¶ 15 After Pharmacy filed its motion to dismiss pursuant to 12 O.S.2011 § 2012(B)(6), Carista replied with evidence in

---

**5.** *See* OAC 535:10-3-1.1(7), stating: "A pharmacist will refrain from any attempt at diagnosis or treatment that might infringe upon the legally constituted right or obligation of any practitioner of the healing arts."

**6.** Title12 O.S.2011 § 2012(B) provides that if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and *all parties shall be given reasonable opportunity to present all material made pertinent to the motion*

the form of a report by one Michael Burton, a "Pharm D." from Spring, Texas. This report contained both evidence regarding generally accepted dosages and legal conclusions regarding the duty and liability of Pharmacy. Notably, Carista did not ask to amend her petition to add any of these factual allegations. The purpose of a motion to dismiss is to test the legal sufficiency of a petition, not to engage in an evidentiary contest of facts. *Tuffy's*, 2009 OK 4 at ¶ 6, 212 P.3d 1158. This unsworn report therefore was irrelevant to the dismissal inquiry.[6]

### B. The Court's Decision

¶ 16 On review, we agree that Carista's existing petition failed to state facts sufficient to show a breach of duty by Pharmacy. However, as we have identified in this opinion, although the immunity granted by the "learned intermediary" doctrine and other Oklahoma statutes is broad, it is not absolute. Pursuant to § 2012(G), the district court should have allowed Carista the opportunity to amend her petition to allege a recognized duty of the pharmacist in this case, following the principles outlined in this opinion.

### CONCLUSION

¶ 17 This matter is remanded with the following instructions: The dismissal with prejudice is vacated. The district court is to dismiss Carista's petition with leave to amend to state a cognizable claim, and set a reasonable time for doing so. If such amendment is not forthcoming, the court may follow the dismissal procedure set out in § 2012(G).

¶ 18 **VACATED AND REMANDED WITH INSTRUCTIONS.**

BARNES, J., concurs, and RAPP, J., concurs in part and dissents in part.

*by the rules for summary judgment.* It is clear that, in this case, the matter was not converted to a summary judgment, and that it remained a dismissal proceeding. "This Court will not treat a motion to dismiss as one for summary judgment where the parties were neither put on notice of the action nor given an opportunity to present applicable material and where there is no indication that the trial judge considered material outside the pleadings." *Estes v. Estes,* 1996 OK 79, ¶ 19, 921 P.2d 346.

RAPP, J., concurring in part and dissenting in part:

¶1 I concur in vacating the trial court judgment but dissent as to the grounds stated by Majority, as set forth herein:

¶2 Subsection 37(e) is a statutory recognition of the existence of a duty on the part of the pharmacist. The first question for determination is: Does a duty, recognized by law, exist on the part of Westminster, which requires that it conform to a standard of conduct so as to protect buyers of narcotic prescriptions, like Carista, against an unreasonable risk from an improper or dangerous use of the prescription? As stated in *McClure v. Sunshine Furniture*, 2012 OK CIV APP 67, ¶¶ 22–24, 283 P.3d 323, 328–29:

> A duty is a threshold question in any negligence case. Whether a duty exists presents a question of law which depends on the relationship between the parties and the general risks involved in the common undertaking. *Wofford v. Eastern State Hospital*, 1990 OK 77, ¶ 8, 795 P.2d 516, 518.

> Oklahoma courts have recognized that the existence of a duty depends on the relationship between the parties and the general risks involved in the common undertaking. *See Union Bank of Tuscon* [*Tucson*] *v. Griffin*, 771 P.2d 219 (Okla. 1989). Whether a defendant stands in such relationship to a plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff is a question for the court. *Id.* 'Duty of care is not a concept that arises only by statute ... Whenever a person is placed in such a position with regard to another that it is obvious that if he did not use due care in his own conduct he will cause injury to the other, the duty at once arises to exercise care commensurate with the situation in order to avoid such injury.' *Union Bank*, 771 P.2d at 222.

> Professor Prosser had this to say: The assertion that liability must ... be denied because defendant bears no 'duty' to plaintiff begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.... [Duty] is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. (Prosser, *Law on Torts* [3d ed. 1964] at pp. 332–333.)

*Wofford*, 1990 OK 77 at ¶ 10, 795 P.2d at 519.

The most important of those policy considerations in the determination of whether a duty exits is foreseeability. The general rule is that a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Wofford*, 1990 OK 77 at ¶ 11, 795 P.2d at 519. Foreseeability as an element of duty establishes a "zone of risk," that is, whether the conduct "creates a generalized and foreseeable risk of harming others." *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 8, 913 P.2d 1318, 1321; *McCain v. Florida Power Corporation*, 593 So.2d 500, 502–503 (Fla. 1992). When a defendant's conduct "creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from harm that the risk imposes." *McClain*, 593 So.2d at 503.

The foreseeability component of duty is different than the foreseeability element of proximate cause. The latter is concerned specifically with whether and to what extent the defendant's conduct foreseeably and substantially caused the injury that occurred. *Delbrel*, 1996 OK 36 at ¶ 12, 913 P.2d at 1322; *McCain*, 593 So.2d at 502–503.

¶3 Thus, the Subsection 37(e) definition of what constitutes a component of the pharmacist's practice is a statutory statement of duty. However, the Opinion narrowly interprets Subsection 37(e) as being only a provision defining what may be regulated and not what may be considered as a duty for tort law purposes. The case of *Pharmcare Oklahoma, Inc. v. State of Oklahoma Health Care Authority*, 2007 OK CIV APP 5, 152 P.3d 267 (case dealing with recoupment of funds paid

under the Oklahoma Medicaid program), suggests otherwise.

¶4 In *Pharmcare*, at paragraphs 26 and following, the Court engaged in an analysis of whether a pharmacist had a duty or responsibility to determine whether a particular medication was medically necessary. In concluding that the pharmacist did not have that duty, the Court found that the pharmacist's duty was defined (and limited) under the Pharmacy Act, citing Subsection 37. Thus, the *Pharmcare* Opinion states, "The Pharmacy Act provides the scope of a pharmacist's practice. The 'practice of pharmacy' includes (Subsection 37).... A pharmacist's duty to that same patient is clearly defined and limited under the Pharmacy Act. These duties include accurately filling and dispensing prescriptions, advising by counseling or providing other information." *Pharmcare Oklahoma, Inc.*, 2007 OK CIV APP 5 ¶¶ 28, 30, 152 P.3d at 273.

¶5 I would reverse the trial court's dismissal of this action.